672 F.2d 381
 28 Fair Empl.Prac.Cas. 130,
28 Empl. Prac. Dec. P 32,478
Ollie T. HILL, John W. Ward, Charles R. Merriwether, Jr.,
Edward H. Minatee, Minnie Marble, Mary E. Carter,
Individually and on behalf of all other
persons similarly situated, Appellants,
v.
WESTERN ELECTRIC COMPANY, INC., Appellee.
Equal Employment Advisory Council, Amicus Curiae.
 No. 80-1279.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 3, 1981.
Decided March 1, 1982.
 
 Graeme Bush, Washington, D. C. (Paul S. Reichler, James A. Beat, Jeffrey A. Burt, Arnold & Porter, Geoffrey Judd Vitt, Washington, D. C., Washington Lawyers Committee on brief), for appellants.
 Zachary D. Fasman, Washington, D. C. (Susan L. Segal, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., on brief), for appellee.
 Before WIDENER and PHILLIPS, Circuit Judges, and RICHARD L. WILLIAMS, United States District Judge, sitting by designation.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 In this appeal, three unsuccessful applicants for employment with Western Electric Company (Western) challenge the denial of their motion to intervene in a class action against Western as representatives of a portion of the class consisting of blacks and females who have discriminatorily been denied employment at Western's Arlington, Virginia facility. We vacate the order denying intervention on the basis that the district court did not adequately assess the motion, and remand for reconsideration of the motion in light of our discussion in this opinion.
 
 
 2
 * This is the second appeal arising from a class action originally filed by eight present and former employees of Western seeking injunctive relief and back and front pay for alleged violations by Western of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981 in discriminating against blacks and females in hiring, job placement and promotion at its Arlington, Virginia facility.
 
 
 3
 A central issue on the first appeal and again on this one involves the inclusion within the plaintiff class of unsuccessful hiring applicants as well as employees denied promotions and job assignments. In its original structuring of the class, the district court first concluded that it could not include such persons because none of the then named representative plaintiffs had been denied employment but were all employees. On the basis of our decision in Barnett v. W. T. Grant Co., 518 F.2d 543 (4th Cir. 1975), however, the district court reversed its earlier certification decision and expanded the class to include those who suffered discrimination in hiring. The expanded class was defined to include those blacks and females "who have applied for employment at Defendant's facility in Arlington, Virginia, since July 2, 1965, or who will hereafter apply."
 
 
 4
 Following a three-day bench trial the court issued a memorandum opinion concluding that Western had discriminated against blacks and women in violation of Title VII in hiring, job placement and promotion at its Arlington, Virginia facility, Hill v. Western Electric Co., No. 75-375-A (E.D.Va., April 30, 1976) (mem.) and subsequently entered a decree providing for a special master's determination of claims to back and front pay by identified members of the certified class. Western was required to institute priority hiring and promotion of blacks and females to remedy past discrimination and to develop and implement nondiscriminatory, job-related hiring and promotion criteria to avoid future discrimination. To prevent Western from seeking to avoid compliance with the decree through institutional reorganization, the court appended a footnote to the decree in which it stated that "(t)he Arlington facility for purposes of this decree encompasses ... any functional successor" to either of the operations based at that facility. Jt. App. at 276.
 
 
 5
 On appeal, we affirmed in part, reversed in part and remanded. Hill v. Western Electric Co., 596 F.2d 99 (4th Cir. 1979). With respect to the inclusion of hiring discriminatees in the certified class, we stated that, while our decision in Barnett arguably might have authorized the named plaintiffs, who were employed, to represent persons denied employment, that possibility was now foreclosed by the Supreme Court's intervening holding in East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), that a class representative must "possess the same interest and suffer the same injury" as the class members he or she seeks to represent. Therefore, we vacated the district court's finding of discrimination in hiring for lack of an adequate representative for those members of the certified class who allegedly were discriminatorily denied employment. Hill v. Western Electric Co., 596 F.2d at 101-02. Following the denial of plaintiffs' petition for certiorari, our mandate was reinstated, and the case was remanded to the district court.
 
 
 6
 Plaintiffs' counsel then filed motions for intervention or to amend the complaint to add three new plaintiffs-Bailey, Johnson and Furr-to the action. Intervention was sought on behalf of the individuals and on behalf of the class of rejected applicants for employment at Western's Arlington facility. With respect to the qualifications of the three proposed intervenors, plaintiffs alleged that Bailey was a black female who had been denied employment at the Arlington facility in 1972 and 1973 as the result of discriminatory hiring practices, which have continued, without interruption, to the present. She filed a charge with the EEOC on November 6, 1979 and was issued a right-to-sue letter on December 6, 1979.
 
 
 7
 Johnson, a black female, and Furr, a black male, alleged that they had unsuccessfully applied for employment with Western as "installers" in August 1979. Although they applied at Western's Landover, Maryland facility, they contended that this facility was a successor to one of the operations that had been housed at Western's Arlington facility. They also alleged that they had been denied employment because they failed to pass a test that was essentially the same as the one that the district court had found to be discriminatory when used at the Arlington facility. Johnson filed a charge with the EEOC on October 2, 1979, while Furr filed his charge on October 17, 1979. Both were issued right-to-sue letters on December 6, 1979.
 
 
 8
 Ruling on the motion to intervene, the district court first concluded that it was not precluded by the terms of the remand of this court from allowing intervention but, in the exercise of its discretion, then denied the motion. The court gave two essential reasons. First, the length of time that the case had continued from its filing in May 1975. On this the court observed that "(i)t's time this case got concluded." Second, said the court, intervention would require a hearing on the hiring claims, and this would delay relief on the job assignment claims now upheld on the first appeal because "it's impractical if not impossible to be running part of the case here and part before the master on the job assignments claims."
 
 
 9
 Plaintiffs and Western subsequently reached, and submitted to the district court, a settlement agreement covering all outstanding issues in the litigation except for the claims relating to hiring discrimination. The court entered a final judgment approving this agreement on September 19, 1980, and this appeal challenging the refusal to allow intervention for prosecution of the hiring claims followed.
 
 II
 
 10
 The sole issue is the propriety of the district court's denial of the motion for permissive intervention under Fed.R.Civ.P. 24(b).[1] Although a decision on a Rule 24(b) motion lies within the sound discretion of the trial court, Black v. Central Motor Lines, Inc., 500 F.2d 407, 408 (4th Cir. 1974), some standards have been developed to guide the courts in making intervention determinations. We conclude that the district judge did not properly apply those standards here.
 
 
 11
 The court first emphasized the lateness of the motion in the progress of the protracted litigation. We have held, however, that in ruling on motions for intervention "(m)ere passage of time is but one factor to be considered in light of all the circumstances." Spring Construction Co. v. Harris, 614 F.2d 374, 377 (4th Cir. 1980); accord, Atkins v. State Board of Education, 418 F.2d 874 (4th Cir. 1969). In a class action the critical issue with respect to timeliness is whether the proposed intervenor moved to intervene "as soon as it became clear ... that the interests of the unnamed class members would no longer be protected by the named class representatives." United Airlines, Inc. v. McDonald, 432 U.S. 385, 394, 97 S.Ct. 2464, 2469, 53 L.Ed.2d 423 (1977). Because the airline stewardess in McDonald had moved to intervene within the time for taking an appeal and as soon as she was advised that the named class representatives did not intend to prosecute an appeal, the Supreme Court in that case affirmed the court of appeals' reversal of the district court's order denying intervention. Id. at 396, 97 S.Ct. at 2470.
 
 
 12
 Invoking this standard, Western argues that the proposed intervenors should have become aware of the need and moved to intervene at the very latest when the court of appeals entered its inadequacy of representation decision in April 1979. A motion to intervene filed more than nine months after that date could not have been timely says Western.
 
 
 13
 The proposed intervenors, on the other hand, argue that they were under no obligation to seek intervention until the Supreme Court denied plaintiff's petition for a writ of certiorari on October 29, 1979. On this we agree with the intervenors. Until the Supreme Court denied certiorari the named class representatives were actively pursuing, and had not been foreclosed from representing, the interests of the hiring class. At the time certiorari was denied, proposed intervenors Johnson and Furr had already begun the administrative action that was a procedural prerequisite to their intervention by filing charges with the EEOC, and proposed intervenor Bailey took that step eight days later on November 6, 1979. All three proposed intervenors received their right-to-sue letters on December 6, 1979. Just as the stewardess in McDonald timely sought intervention within the thirty days available for taking an appeal, the proposed intervenors in the present case, by filing their motion on January 17, 1980, timely sought intervention well within the 90 days that they had under section 706(f)(1) of Title VII to institute suit.
 
 
 14
 In any event, the "most important consideration (in passing on an application for intervention) is whether the delay has prejudiced the other parties." Spring Construction Co. v. Harris, 614 F.2d at 377. Western clearly could claim no prejudice from the delay itself because, like the employer in McDonald, it was "put on notice by the filing of the ... complaint of the possibility of classwide liability, and there is no reason why ... pursuit of that claim should not be considered timely under the circumstances." United Airlines, Inc. v. McDonald, 432 U.S. at 395, 97 S.Ct. at 2470.
 
 
 15
 The prejudice that might have resulted to those members of plaintiff class whose claims had been affirmed on appeal presents a much more troublesome question. In fact, this may have been the district court's primary reason for denying intervention. Courts have properly "emphasized the seriousness of the prejudice which results when relief from long-standing inequities is delayed." Alaniz v. Tillie Lewis Foods, 572 F.2d 657, 659 (9th Cir. 1978). Moreover, it is clear that had intervention been allowed the district court would have been compelled to conduct a hearing on class certification, see Simmons v. Brown, 611 F.2d 65, 67 (4th Cir. 1979), and that some relitigation on the merits would have followed.
 
 
 16
 Any prejudice to other members of the class could have been avoided, however, by simply bifurcating the proceedings. While the trial court considered it "impractical if not impossible to be running part of the case here and part before the master on the job assignments claims," it gave no reasons in support of this conclusion and Western has offered none on appeal. The claims of those members of the class alleging discrimination in hiring essentially were ones to be heard on the merits of liability, while those for discrimination in job assignments needed only to be heard on damages. Bifurcation of Title VII class action proceedings for hearings on liability and damages is now commonplace, and there is all the more justification for such a procedure when, as here, separable claims, subject if necessary to structuring by sub-classes, Fed.R.Civ.P. 23(c)(4)(B), are involved. While we owe great deference to the special capability of a trial judge to gauge better than can we such practical difficulties, we conclude that here the impracticality envisioned was given greater weight than general experience warrants.
 
 
 17
 In a general attack on the propriety of intervention, Western contends that post-remand intervention is an unusual procedure and should be granted only in exceptional circumstances. To the extent any more stringent standard for intervention following judgment is warranted, however, it must be based upon heightened prejudice to the parties and more substantial interference with the orderly process of the court in that context, MacDonald v. E. J. Lavino Co., 430 F.2d 1065, 1072 (5th Cir. 1970), and "(i)f neither of these results would occur the mere fact that judgment already has been entered should not by itself require an application for intervention to be denied." C. Wright & A. Miller, 7A Federal Practice & Procedure, § 1916, at 582 (1972). We have on a number of occasions permitted intervention following remand, see, e.g., Spring Construction Co. v. Harris, 614 F.2d at 376, and see no special prejudice factors operating here to preclude application of the usual standards.
 
 
 18
 In addition to our perception that the factors directly drawn upon by the district court in denying intervention were given undue weight, we think the court failed to consider-or gave insufficient weight to-another factor possibly militating in favor of intervention. That is the possibility that the original findings of discrimination in hiring might be reinstated were intervention allowed and the intervenors found in the process to be adequate representatives of a properly certified class.[2] Given the likelihood that if denied intervention, these unsuccessful intervenors or others would pursue the class claim in a new action, see Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 461 (E.D.Pa.1968), reinstatement of the findings and conclusions already made on the claim in this action would have the virtues of conserving judicial resources and of avoiding the risk of inconsistent sequential adjudications of the critical issues.
 
 
 19
 Whether reinstatement under these circumstances might ever be appropriate and, if so, the conditions under which it might be are apparently questions we have not previously addressed. Western contends-apparently as an absolute principle of judicial power-that reinstatement is simply not possible. Vacation of the judgment in favor of the hiring claimants on appeal had the effect, contends Western, of rendering the findings upon which it was based void ab initio. The cases cited to support this, however, stand only for the proposition that vacated findings have no vitality as precedent or res judicata in other litigation. See, e.g., Simpson v. Motorists Mutual Insurance Co., 494 F.2d 850 (7th Cir. 1974); Troy State University v. Dickey, 402 F.2d 515 (5th Cir. 1968). But cf. Dunlop v. Rhode Island, 398 F.Supp. 1269 (D.R.I.1975) (while vacated holding of earlier case may not be given collateral estoppel effect in subsequent case, findings of fact in earlier case may be adopted in subsequent case if no new evidence presented).
 
 
 20
 More apposite when the question is, as here, the propriety of their reinstatement in the same action is Finn v. American Fire & Casualty Co., 207 F.2d 113 (5th Cir. 1953). Finn was a removed diversity case in which a jury returned a verdict against one of two insurance companies sued by a policyholder. On appeal the Supreme Court vacated the district court judgment because of a lack of perfect diversity. Upon remand perfect diversity was obtained by dismissal of one of the defendants, but the district court declined to reinstate plaintiffs' vacated judgment on the basis that it had been rendered without jurisdiction. Not so, said the Fifth Circuit on appeal, jurisdiction was not wholly lacking at the time and the judgment might, in the district court's discretion, be reinstated now that the jurisdictional defect had been cured. Finn v. American Fire & Casualty Co., 207 F.2d at 115; accord, Levering & Garrigues Co. v. Morrin, 61 F.2d 115 (2d Cir. 1932).
 
 
 21
 Finn's general principle-with which we agree-is that upon remand following the vacation of a judgment for a jurisdictional defect, it may be appropriate for a trial court to reinstate the judgment once the defect has been cured. This principle must certainly extend past the reinstatement of a judgment itself to reinstatement of findings and conclusions supporting it, and past true jurisdictional defects to less fundamental defects not affecting the merits. The critical limiting factor is of course that the error or defect must not have infected the merits of the very determination sought to be reinstated.
 
 
 22
 The defect of inadequate representation in a class action concededly has, in general, both merits and non-merits implications. Viewed only as a special form of standing requirement in class actions, it smacks of jurisdiction. As such, it is clearly even less fundamental than a pure jurisdictional requirement, so that reinstatement of findings following cure of this defect would seem even more justifiable than reinstatement following cure of a true jurisdictional defect.
 
 
 23
 On the other hand, this defect can be viewed as one potentially affecting the merits. Obviously, the requirement of adequate representation of the class members' interests looks to insuring a fair result on the merits, in a way that true jurisdictional requirements do not. To this extent, reinstatement following a cure of this defect might be seen as less justifiable.
 
 
 24
 From this it is obvious that the defect is not susceptible to general categorization in these terms. Rather, inquiry must turn in the particular case upon whether the specific inadequacy found did or did not probably affect the merits in a way making reinstatement inappropriate. Three inquiries are pertinent to this determination: whether the new class representative desires or resists reinstatement; whether the finding of inadequacy was based solely upon a formal lack of identity of interests and injury between representative and class or upon demonstrated ineffectiveness of representation; and whether the party opposing the class will be unfairly prejudiced by the reinstatement. Resistance to reinstatement by the new class representative, inadequacy based upon demonstrated ineffectiveness of representation, and prejudice to the party opposing the class all suggest an effect upon the merits and militate against reinstatement, while the converse of each suggests a jurisdiction-like defect militating in favor of reinstatement once it is cured.
 
 
 25
 The new class representative's attitude is relevant because it is primarily to protect the interests of the class that the adequacy requirement exists, see generally C. Wright & A. Miller, 7 Federal Practice and Procedure: Civil § 1765 (1972).[3] If properly qualified new representatives are satisfied with generally favorable findings made under technically "inadequate" representation, it can reasonably be assumed that the class members' primary interests in fairness, see Fed.R.Civ.P. 23(a)(4), have been served and that the "inadequacy" was only formal.
 
 
 26
 The determination of inadequacy on appeal may have been concerned only with a technical lack of identity of interest and injury between representative and class, e.g., Hill v. Western Electric Co., 596 F.2d at 101-02, or only with the actual ineffectiveness of a technically qualified representative, e.g., Nance v. Union Carbide Corp., 540 F.2d 718 (4th Cir. 1976), vacated and remanded on other grounds, 431 U.S. 952, 97 S.Ct. 2671, 53 L.Ed.2d 268 (1977), or with both, e.g., East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. at 405, 97 S.Ct. at 1898. To the extent inadequacy is based solely upon lack of sufficient identity of interest, any presumed adverse effect on the merits stemming from this may in fact be utterly belied by the outcome, as we recognized, for example, in Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377, 1380 (4th Cir. 1972) (representation adequate even though representative's individual claim without merit).[4] To the extent the inadequacy determination was based solely upon a presumption of ineffectiveness from lack of shared interest rather than a demonstrated ineffectiveness, it resembles the jurisdictional defect whose cure was held in Finn to permit reinstatement, and should be treated accordingly.
 
 
 27
 Even if the above two factors favor, or do not necessarily preclude, reinstatement of findings favorable to the class, prejudice to the party opposing the class must nevertheless be separately assessed. This should be done in terms of practical fairness, and should proceed on the realization that reinstated findings will of course be subject to review for error in their original adoption if they are thereafter incorporated in any appealable order or judgment.
 
 
 28
 We think that the district court could not properly assess the propriety of allowing intervention here without carefully evaluating the appropriateness of reinstating its findings of fact and conclusions of law on the hiring claims if intervention were allowed. Orderly consideration of that possibility should, we believe, follow a threshold consideration of the formal qualifications of the proposed intervenors. Both below and on this appeal Western attacked the formal qualifications of each on a variety of procedural and jurisdictional grounds.[5] These were not addressed by the district court in view of its decision not to permit intervention on other grounds.
 
 
 29
 These objections should be addressed in the first instance by the trial court, as a preliminary to its reconsideration of the propriety of allowing intervention by any of the proposed intervenors found qualified as representatives.[6] If a proposed intervenor is found not formally qualified to act as a class representative the intervention inquiry as to that person obviously need proceed no further.
 
 
 30
 If the district court finds any of the proposed intervenors formally qualified to represent the class,[7] it should then reconsider the motion for intervention in light of our discussion of the appropriate standards and factors applicable in this case. In that connection, we make these specific observations.
 
 
 31
 First, for reasons earlier stated, we think that neither the post-remand timing of the motion, nor any supposed prejudice to the interests of other members of the plaintiff class from intervention should militate against its allowance on the particular facts here presented.
 
 
 32
 Second, in considering the propriety of reinstating its hiring claim findings and conclusions as that bears upon the intervention question, we believe the court should be guided by the following considerations. The first inquiry should be whether any proposed intervenor(s) found preliminarily qualified to serve as class representative desire in behalf of the class to have the findings reinstated. If they do, this independent judgment can be taken as an indication that the class, for its part, considers that the representation provided the class members' interests in litigation of their hiring claims was "fair and adequate" per Rule 23(a)(4).
 
 
 33
 Next, the court should take into account that this court's determination of inadequacy of representation on the first appeal was based entirely upon the formal lack of sufficient identity of interests between any class representatives and the non-hired members of the class. See Hill v. Western Electric Co., 596 F.2d at 101-02. We did not then address the question of the actual effectiveness of the representation notwithstanding its formal inadequacy. When actual effectiveness is explored as a matter of first instance inquiry, it is obvious that the representation actually provided had all the indicia of diligence and practical effectiveness,[8] including most notably that it yielded a favorable result on these class members' claims.
 
 
 34
 Lastly, in assessing any prejudice to the party opposing the class from reinstatement of the hiring-claim findings, three considerations are important. The first is that those findings were made in a normal adversary context in which no prejudice could have been suffered by Western from the fact alone that the class members were then "inadequately" represented for class action purposes. The second, earlier mentioned, is that the findings, if reinstated, would of course be subject to appellate review for error leading to their original adoption if they then found their way into any appealable order or judgment adverse to Western. The third is that to the extent Western has relevant evidence of events occurring or conditions arising after the date of the findings-as opposed to new evidence of events and conditions predating the findings[9]-reinstatement would not of course preclude consideration of that evidence, assuming it is otherwise admissible.
 
 
 35
 The action is remanded for further proceedings consistent with this opinion.
 
 
 36
 VACATED AND REMANDED.
 
 WIDENER, Circuit Judge, dissenting:
 
 37
 Notwithstanding the majority's extended opinion in this case, the only issue before this court on appeal is whether the trial court erred in refusing to allow the appellants to intervene in the underlying action, pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. The standard for judging such permissive intervention motions is whether the trial court abused its discretion, and "unless that discretion is abused, the court's ruling will not be disturbed on review." NAACP v. New York, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973); 7A Wright & Miller, Federal Practice and Procedure § 1913 at 551-552 (1972). I do not believe we can make a finding of abuse of discretion, and therefore I respectfully dissent. We have converted what I think should have been a routine per curiam dismissal of the appeal into a strained reversal.
 
 
 38
 * The principal consideration for a trial court in deciding permissive intervention motions is whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. United States Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978); Wright & Miller, supra. The trial court considered such criteria in denying intervention, and thus we should be wary of overruling its decision. It noted the lengthy period already taken for disposition of this action and the prospect for future lengthy delays. It further noted that lengthy hearings were likely as to whether these particular intervenors were qualified class representatives. Such hearings would either delay those proceedings already on remand or would require bifurcation of the action, a procedure the trial judge found to be "impractical if not impossible." While the majority has taken issue with the trial judge's characterization of the problems with bifurcation, it relies only on its statement that bifurcation is common in Title VII actions, and offers no explanation of why the trial judge was wrong about bifurcation in the case at hand.[1] In a determination which was essentially factual, I am reluctant to disagree with, and certainly would not reverse, an experienced trial judge who is intimately familiar with five years of extended litigation simply because it is theoretically possible to effect bifurcation through the use of subclasses. If the trial court believes and finds that intervention will cause undue delay, then absent a showing that such intervention will not cause delay, which does not appear here, I do not think that we may properly find that the trial court has abused its discretion.
 
 
 39
 Not only may a trial court deny intervention on the basis of undue delay, but it may also consider whether intervention will prejudice any of the parties. The majority has found that Western would not be prejudiced by an intervention because it was "put on notice by the filing of the ... complaint of the possibility of classwide liability, and there is no reason why ... pursuit of that claim should not be considered timely under the circumstances." At 386, quoting United Airlines, Inc. v. McDonald, 432 U.S. 385, 395, 97 S.Ct. 2464, 2470, 53 L.Ed.2d 423 (1977). I must disagree. First, if intervention is allowed, Western is prejudiced because the original adverse findings of the trial court may well, and probably will, be reinstated under the majority opinion. As discussed in the third part of this dissent, these findings would be reinstated under the majority opinion even though previously vacated by this court. Hill v. Western Electric Corp., 596 F.2d 99 (4th Cir.), cert. denied 444 U.S. 929, 100 S.Ct. 271, 62 L.Ed.2d 186 (1979). Certainly only a direction for final judgment could be more prejudicial to the defendant.
 
 
 40
 Second, the reasoning from the McDonald case, relied upon by the majority, is inapplicable in the present action. In McDonald, the original litigation involved plaintiffs who were victims of the same discriminatory practices alleged in the subsequent class action appeal. 432 U.S. at 387, 97 S.Ct. at 2466. The only difference between the plaintiffs in each action was that those initially bringing the suit had filed formal protests against the practice. Id. In both actions, the underlying substantive question was the same and the issue was independent of the composition of the putative class. By contrast, in the case now before this court, there was no classwide liability legitimately adjudicated in the initial case because, as this court held in its first opinion, the class was overly broad and thus not properly constituted. At issue in the original trial of this case were Western's personnel policies concerning a wide range of employees and would-be employees. When this court held that job applicants were not properly part of this class, it held in terms there was error in the original conduct of this case: "... the named plaintiffs may not properly maintain an action for redress of alleged discrimination in hiring." 596 F.2d at 102. A primary reason for requiring commonality among class members is to prevent class action defendants from being prejudiced through defense of unmanageable actions. Certainly a finding that the original class was overly broad and our vacation of the judgment of the district court is a necessary indication that the original action prejudiced Western.
 
 
 41
 In light of this prejudice and the trial court's well reasoned conclusion that intervention would cause undue delay for the original parties, I do not believe that the trial court abused its discretion in denying intervention.
 
 II
 
 42
 Other wholly independent grounds call for affirming the district court's exercise of discretion in its denial of intervention. SEC v. Chenery Corp., 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). The record on appeal indicates that the intervenors are not members of the class of job applicants which was involved in the first trial and thus it is incorrect to allow their intervention now. Even if their status may not be perfectly clear, their claims to class membership are doubtful at best, and certainly are "too speculative and too contingent on unknown factors to conclude that there was an abuse of discretion in denying leave to intervene." Sutphen Estates v. United States, 342 U.S. 19, 23, 72 S.Ct. 14, 17, 96 L.Ed. 19 (1951). Allowing them to intervene would have unjustifiably complicated the proceedings by adding extraneous issues. Montgomery v. Rumsfield, 572 F.2d 250, 255 (9th Cir. 1978); Lipsett v. United States, 359 F.2d 956, 959-60 (2d Cir. 1966); 3B Moore's Federal Practice P 24.10(4); Wright & Miller, supra, § 1913 at 556-57. It is apparent from the discussion which follows that the issues as to class membership would have been much more appropriately handled at a separate trial. Lipsett, 359 F.2d at 960.
 
 
 43
 Two of the three intervenors, Darlene Johnson and Victor L. Furr, III, did not apply for employment with Western until 1979 and then made application to Western's Landover, Maryland facility. The trial in this case took place in 1976, three years before Johnson and Furr applied, and the trial concerned Western's hiring practices in Arlington, Virginia. It is apparent that the conditions at Landover experienced by Furr and Johnson were radically different from those at Arlington considered at trial. First, even if the Landover facility is considered a functional successor to the Arlington facility,[2] all hiring decisions at Landover are made by Western's Maryland Installation District personnel and not the Virginia Installation District personnel responsible for Arlington. The practices of the Virginia personnel who interviewed job applicants for the Arlington facility were considered by the district court to be a factor in the evidence of discrimination against women and blacks. Second, even if the Landover applicants could be considered to have constructively applied to the Arlington facility, that facility made a major change in its hiring practices in 1976, the year of the trial. Beginning then, most entry level hiring was done through referrals from the Virginia Employment Commission rather than through a variety of sources. Western's earlier practices connected with the advertising of available positions had been a major concern of the trial court. Finally, and perhaps most importantly, even though it concerns only part of the district court's decision, Western's hiring of women and blacks in the 1976-79 period at its Arlington Service Center was significantly higher than in previous years. During that period, 53% of new hires were female and 70% were members of minority groups. These percentages are close to or even above the quotas set in the district court's decree,[3] and are not too different from the percentage of total applicants which came from each group (applicants were 50% female and 72% minority). Statistics from earlier years which showed Western hired a far higher percentage of white, male applicants than female and black applicants had been a significant contributor to the district court's finding that Western discriminated. It is thus obvious that even though the district court's decree never took effect, Western's hiring practices in 1979 were far different than those prior to the 1976 trial. Furr and Johnson did not "suffer the same injury as the class members." East Texas Motor Freight v. Rodriguez, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977).
 
 
 44
 The third intervenor, Betty Bailey, claims to have filed applications with Western in 1972 and 1973, but did not file a complaint with the EEOC until November 1979. There is a 180 day statute of limitations for the filing of Title VII complaints with the EEOC, 42 U.S.C. § 2000e-5(e), although courts will toll the deadline for members of a class where there is a class action underway. Wetzel v. Liberty Mutual Insurance Co., 508 F.2d 239, 246 (3d Cir.), cert. denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); see American Pipe & Construction Co. v. Utah, 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974). Courts will not toll the statute, however, where the individual could not have participated in the original action. That is, if the statute of limitations had already expired for the individual when the action was first commenced, then the individual cannot be considered a member of the class before the court. McDonald, 432 U.S. at 392, 97 S.Ct. at 2468; Wetzel, 508 F.2d at 246.[4] Bailey claims she applied to Western at the latest in 1973, was interviewed and not hired. The complaint in this action was filed in district court on May 14, 1975. Right to sue letters were issued for the original class representatives in February and April 1975. Bailey's brief does not even claim that her complaint was within 180 days of the time Ollie Hill, et al, filed their EEOC complaints; thus it is apparent that Bailey's 180 day statute of limitations expired before this action commenced.[5] She simply was not "a member of that class against whom the statute had not run at the time the class action was commenced." McDonald, 432 U.S. at 392, 97 S.Ct. at 2468.
 
 
 45
 Because none of the three intervenors were members of the class whose case was before the trial court, it would have been proper for the district court to deny intervention on this ground alone. There is thus no basis for this court to reverse the denial of intervention.
 
 III
 
 46
 While the question of whether the trial judge abused his discretion in denying intervention is the only one before the court, the majority's extensive discussion of the effect intervention will have on reinstatement of the original findings of the trial court makes necessary my indicating disagreement with those conclusions also. Such holding renders meaningless this court's first opinion and contradicts the teachings of the Supreme Court in East Texas Motor Freight v. Rodriguez, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977). In Hill I, this court ordered the finding of discriminatory hiring practices vacated because:
 
 
 47
 (t)he interest of these named, employed plaintiffs in being free of discrimination in job assignments and in promotions is so different in kind from that of people who were denied any employment that the named plaintiffs may not properly maintain an action for redress of alleged discrimination in hiring. Under Rodriguez, certification of a class including victims of alleged hiring discrimination who never were employed by Western Electric was in error.
 
 596 F.2d at 102. This court concluded:
 
 48
 Our conclusion is that on this record a finding of discrimination against blacks and females is warranted only in job assignments to Shop Trades and against females in job assignments in the warehouse in the Service Center. Upon remand, the court should frame an appropriate decree consistent with this opinion, granting appropriate relief with respect to those job assignments. In all other respects, the findings of the district court are vacated.
 
 
 49
 Id. at 107 (emphasis added).
 
 
 50
 It is difficult for me to understand how this court can now say that simply by changing the identification of the class representatives, the problems noted in Hill I are cured. It is the clear teaching of Rodriguez that courts will not permit improperly constituted classes even in Title VII actions. The Supreme Court has said:(C)areful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonetheless indispensible. The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may be the real victims of discrimination.
 
 
 51
 431 U.S. at 405-06, 97 S.Ct. at 1897-98. The majority in the present action has sought to distinguish Rodriguez by saying:
 
 
 52
 Rodriguez, holding that failure of a named plaintiff's claim prior to class certification precluded subsequent class certification with that plaintiff as representative, expressly noted that "a different case would be presented if the (trial court) had certified a class and only later had it appeared that the named plaintiffs were ... inappropriate class representatives." Rodriguez, 431 U.S. at 406 n. 12 (97 S.Ct. at 1898 n. 12). This "different case" is of course exactly the one presented in (Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377 (4th Cir.), cert. denied 409 U.S. 982 (93 S.Ct. 319, 34 L.Ed.2d 246) (1972) ), and in the instant case. "In such a case," said the Rodriguez Court, "... the claims of the class members would not need to be mooted or destroyed...." Id.
 
 
 53
 At 389, n. 4.
 
 
 54
 The majority, however, in its quotations from Rodriguez, has omitted a vital clause from the Supreme Court's opinion which actually said:
 
 
 55
 (A) different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives. In such a case, the class claims would have already been tried, and, provided the initial certification was proper and decertification not appropriate, the claims of the class members would not need to be mooted or destroyed because subsequent events or the proof at trial had undermined the named plaintiffs' individual claims. See, e.g., Franks v. Bowman Transportation Co., 424 U.S. 747, 752-757 (96 S.Ct. 1251, 1258-60, 47 L.Ed.2d 444); Moss v. Lane Co., 471 F.2d 853, 855-856 (CA4).
 
 
 56
 431 U.S. at 406, n. 12, 97 S.Ct. at 1898, n. 12 (emphasis added). Clearly, the case at issue is one where the initial certification was not proper. In Hill I, we so held and said, "Under Rodriguez, certification of a class including victims of alleged hiring discrimination who never were employed by Western Electric was in error." 596 F.2d at 102. The majority's distinction of Rodriguez here thus contradicts both our first Hill opinion and Rodriguez itself.
 
 
 57
 It is important to distinguish the facts here from cases such as Brown v. Gaston County Dyeing Machine Co., 457 F.2d 1377 (4th Cir.), cert. denied, 409 U.S. 982, 93 S.Ct. 319, 34 L.Ed.2d 246 (1972), and Moss v. Lane Co., 471 F.2d 853 (4th Cir. 1973).[6] Those cases involved so-called "headless classes" where a plaintiff brought suit as a class representative, was certified by the court, and then turned out to be an inappropriate class representative because his individual claims failed. In Brown, for example, the trial court determined that the class representative had not suffered discrimination after the court had certified the class. 457 F.2d at 1379. Nevertheless, this court allowed the action to continue after being satisfied that evidence of discriminatory hiring practices existed. Id. at 1383. Similarly in Moss, this court reversed the dismissal of a class action where the class representative's individual claim was found baseless. 471 F.2d at 855-56.
 
 
 58
 By contrast, in the instant case the class representative's claim was found to be tenable, but under Rodriguez he was not permitted to represent employees who were not similarly injured. The error was in the certification process. 596 F.2d at 102. Unlike the headless class situation, the error here was manifest and patent from the beginning of the action, and not an error discoverable only upon commencement of trial. The named plaintiffs were never part of the class of disappointed applicants for employment and thus certification never should have occurred.
 
 
 59
 The majority characterizes the problems with the original certification as involving only a "technical lack of identity of interest and injury between representative and class," at 389, and thus easily cured. It reiterates that the first Hill decision "was based entirely upon the formal lack of identity of interests." Id. at 391. Such statements trivialize both Hill I and Rodriguez by their necessary implication that class composition is of little or no importance in Title VII actions. Admittedly, this court has not been consistent in its attitude toward the breadth of classes in employment discrimination litigation. In many cases, both before and after Rodriguez, we have refused to tolerate overly broad classes. E.g., Abron v. Black & Decker, 654 F.2d 951 (4th Cir. 1981); United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844 (4th Cir. 1979); Belcher v. Bassett Furniture Industries, Inc., 588 F.2d 904 (4th Cir. 1978); Doctor v. Seaboard Coast Line R. Co., 540 F.2d 699 (4th Cir. 1976). In others, however, we have allowed broadly constituted actions to proceed. E.g., Brown v. Eckerd Drugs, 663 F.2d 1268 (4th Cir. 1981); Barnett v. W. T. Grant Co., 518 F.2d 543 (4th Cir. 1975). In light of the language of Rodriguez that class representatives must " 'possess the same interest and suffer the same injury' as the class members," 431 U.S. at 403, 97 S.Ct. at 1896, it is clear that the course taken in the cases mentioned first just above is that approved by the Supreme Court. Nevertheless, the majority holds that an overly broad class is only a "technical" problem and that proceeding with such a class has no real effect on the case. I can not accept this proposition. If it is adopted, Rodriguez is robbed of its virtue, and while it may remain good law, there will be no reason for a district court to enforce its holding in this circuit.
 
 
 60
 Crucial to the majority's holding is the conclusion that an appellate court's order vacating a decision because of faults in class certification does not preclude a court from subsequently reinstating the substantive findings. The majority quite candidly admits that this is a question not previously addressed, at 387-388, and for precedent relies upon Finn v. American Fire & Casualty Co., 207 F.2d 113 (5th Cir. 1953). In Finn, the defendants had removed an action to district court even though there was imperfect diversity among the parties. The Supreme Court ordered that the trial court vacate its judgment because imperfect diversity had meant that the district court was without jurisdiction to hear the matter. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 18-19, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951). On remand, the district court dismissed a not indispensable defendant and then ordered a new trial because the court concluded that prior to the dismissal, it had been wholly without jurisdiction to hear the matter. 207 F.2d at 114.[7] The Fifth Circuit reversed the granting of a new trial and ordered reinstatement of the prior judgment against the remaining defendant. It relied on cases holding that dismissal of a not indispensable party, even after trial, can be given the retroactive effect of saving the trial court's initial findings. E.g., Dollar S.S. Lines v. Merz, 68 F.2d 594, 595 (9th Cir. 1934).
 
 
 61
 While the Finn decision was probably permissible at that time,[8] a quite recent Supreme Court decision necessarily overrules its holding. In Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Court considered whether it is proper for a court of appeals to apply only prospectively a ruling that if applied to the case before the court of appeals would deprive that court of jurisdiction. Id. at 369-70. In Firestone, the Eighth Circuit had held prospective only application was proper and thus reached the merits of the case. The Supreme Court reversed and stated, "If the appellate court finds that the order from which a party seeks to appeal does not fall within the statute, its inquiry is over. A court lacks discretion to consider the merits of a case over which it is without jurisdiction...." Id. at 379 (emphasis added).[9] Application of this principle to Finn shows that the district court there properly ordered a new trial after dismissing one of the defendants. That court had been without jurisdiction when the dismissed defendant was a party before it and thus it was as legally impossible for the trial court to reach the merits of the case as it was for the Eighth Circuit to reach the merits of the case in Firestone.[10]
 
 
 62
 Without Finn and its allied cases, the majority here has no case support for the proposition that courts have discretion to reinstate judgments vacated because of defects in the underlying action. I believe that the correct disposition of this question should be to follow those courts and authorities which have concluded that vacated judgments are not res judicata and thus have no precedential value in subsequent litigation. E.g., Simpson v. Motorists Mutual Insurance Co., 494 F.2d 850, 854 (7th Cir. 1974); Nader v. Volpe, 466 F.2d 261, 265 (D.C.Cir.1972); DeNafo v. Finch, 436 F.2d 737, 740 (3d Cir. 1971); Troy State University v. Dickey, 402 F.2d 515, 516 (5th Cir. 1968); Dunlop v. Rhode Island, 398 F.Supp. 1269, 1273 (D.R.I.1975); 1B Moore's Federal Practice P 0.416(2) at 2231. The majority here has distinguished several of the above cases because they concerned use of vacated findings in subsequent actions rather than in continuation of the same action. At 387-388. Not only is that not true of DeNafo, for example,[11] but the difference is really immaterial. The essence of the principle of res judicata is that questions once litigated between two parties cannot be litigated again. Logically it makes little difference whether the attempted subsequent litigation is a continuation of the same action or is a separate action. In this case, the question of whether Western was guilty of discriminatory hiring practices was never properly before the trial court because there was never a proper plaintiff. That the court's finding should be accorded res judicata effect under these circumstances is fundamentally incorrect.
 
 
 63
 I also feel it necessary to comment on the majority's statement that "conservation of judicial resources" favors the reinstatement of the previous findings. "Conservation of judicial resources" and its cousin "judicial economy" are currently popular phrases which to my observation are often used to shortcut regular procedures, as here. We have before us an attenuated proceeding that has involved countless hours and thousands of dollars of the litigants' resources, attorneys' resources, and judicial resources. We have now had this case before us twice, and under today's ruling we shall doubtless see it again. It is a little late to be worried about conservation of judicial resources. Our obligation is to provide a fair, impartial and thorough analysis of matters that come before us. Bypassing fundamental judicial principles such as res judicata so that we can be efficient does not serve that purpose. In an analogous situation, where the majority holding restricted the availability of a jury trial, the dissenting justice observed:
 
 
 64
 No doubt parallel 'procedural reforms' could be instituted in the area of criminal jurisprudence, which would accomplish much the same sort of expedition of court calendars and conservation of judicial resources as would the extension of collateral estoppel in civil litigation. Government motions for summary judgment, or for a directed verdict in favor of the prosecution at the close of the evidence, would presumably save countless hours of judges' and jurors' time. It can be scarcely doubted, though, that such 'procedural reforms' would not survive judicial scrutiny under the jury trial guarantee of the Sixth Amendment. Just as the principle of separation of powers was not incorporated by the Framers into the Constitution in order to promote efficiency or dispatch in the business of government, the right to a jury trial was not guaranteed in order to facilitate prompt and accurate decision of lawsuits.
 
 
 65
 Parklane Hosiery Co. v. Shore, 439 U.S. 322, 348, 99 S.Ct. 645, 660, 58 L.Ed.2d 552 (1979) (Justice Rehnquist, dissenting). When part of the trial court's decision in this case was vacated by Hill I, the trial became a nullity as to those issues, and that vacated decision was not meant to be resurrected. If anyone connected with this case was qualified to judge the most judicially efficient way to dispose of it, it was the trial judge. He concluded that allowing intervention would cause undue delay, and I agree.
 
 IV
 
 66
 The progress of this case raises additional questions which the majority has failed to confront, but nevertheless merit comment. No opinion, I suggest, should be written without taking them into account when the disappointed intervenor has other adequate means of enforcing his right.
 
 
 67
 First, I have serious doubts whether a person denied permissive intervention under FRCP Rule 24(b) can appeal that decision separately from other issues which remain to be heard. While courts recognize the finality of decisions regarding denials of intervention of right sought under FRCP Rule 24(a),[12] the considerations are far different on motions made solely for permissive intervention. The majority here implicitly assumes that permissive intervention motions are so separately appealable and the major treatises apparently would agree where there has been a "clear abuse of discretion." 9 Moore's, supra, P 110.13(7) at 182; 7A Wright & Miller, supra, § 1923 at 627, 630. Nevertheless, I believe the reasoning of Judge Friendly to be much more appropriate in such situations:
 
 
 68
 Where the sole ground urged for reversal of an order denying permissive intervention is abuse of the trial judge's discretion, we would be reluctant to permit the fragmentation and delay that would result from allowing such orders to be appealed, at least so long as the applicant has "other adequate means of asserting his rights." (citations omitted).
 
 
 69
 Levin v. Ruby Trading Corp., 333 F.2d 592, 594 (2d Cir. 1964). Moore's, at 182, also recognizes this view. Such reasoning is consistent with the Supreme Court's reasoning in Sutphen Estates v. United States, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19 (1951). There the trial court's denial of permissive intervention was affirmed because there were too many speculative and unknown factors concerning whether the applicants were entitled to intervene. Allowing appeals of such denied permissive intervention motions has the same effect recognized in Sutphen Estates of delaying the proceedings below.
 
 
 70
 Similarly, in Allen Calculators, Inc. v. National Cash Register Co., 322 U.S. 137, 142, 64 S.Ct. 905, 907, 88 L.Ed. 1188 (1944), a case which involved an appeal following the entry of a final decree, the Supreme Court noted that review of certain antitrust decisions was vested solely in the Supreme Court "to prevent the delay of unwarranted appeals by disappointed applicants to intervene, which would suspend the ultimate disposition of suits under the antitrust acts...."
 
 
 71
 The delays caused by appeals of such denied permissive intervention motions would be readily illustrated by the instant case, but for further error. On February 8, 1980, the trial court denied intervention, and on March 5, 1980, the attorneys filed a notice of appeal on behalf of "the plaintiffs and the proposed intervenors." Subsequently, on May 23, 1980, the original parties reached a settlement agreement covering all claims other than Western's hiring practices (which are involved here). On September 19, 1980, the district court entered an order approving this agreement and on December 30, 1981, following implementation of the agreement, the district court, by another order, dismissed all relevant parts of the suit with prejudice except those involved here.
 
 
 72
 I believe that it was manifestly incorrect for the parties to continue with the proceedings below, while an order of the district court affecting the parties was on appeal before this court. The appeal effectively denied the court below of any jurisdiction in this matter. Armstrong v. Board of School Directors, 616 F.2d 305, 327 (7th Cir. 1980); Lewis v. Tobacco Workers International Union, 577 F.2d 1135, 1139 (4th Cir. 1978).[13] The parties and the district court proceeded with the settlement under the impression that it would be possible to consider the order on the intervention motion as an appealable order separate from the rest of the case. The fallacy in that reasoning is readily apparent. One of the trial court's principal grounds for denying the intervention motion was its stated reason that allowing intervention would interfere with carrying out that part of its decision which this court had affirmed. When the parties settled that part of the case, the factual setting before the district court no longer existed and the facts upon which this court now bases its decision no longer exist. So we are writing at least in part in a vacuum, giving our opinion upon a set of facts which we are aware do not exist. That alone is sufficient reason to dismiss this appeal. See Mills v. Green, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293 (1895). The entire litigation was inextricably linked, and it is impossible for us to decide a part of the case while at the same time the district court is deciding another part of the case upon which our part depends, without the risk of procedural chaos. In re Combined Metals Reduction Company, 577 F.2d 179, 200-201 (9th Cir. 1977). There is bound to be at least serious doubt as to the validity of the orders of the district court approving the settlement and dismissing the action except the parts of the case now under review. This doubt is needless and would not have arisen had we followed the simple rule of dismissing appeals in which the sole question for review is the abuse of discretion of the district court in denying intervention under FRCP 24(b) and in which the intervenors have, as here, a way to get all the relief sought in another forum.
 
 
 73
 From the preceding discussion in both the majority and dissenting opinions, it is obvious that this litigation has turned into an extraordinarily complex exercise in judicial theory. The trial court's decision to deny intervention because it would unnecessarily delay this litigation has proved highly prophetic. The most responsible decision for this court would be to dismiss this appeal.
 
 V
 
 74
 An entirely separate reason to dismiss the appeal is to look at the case from the defendant's viewpoint. After a prolonged and strenuous trial and appeal, it was determined that the applicants for employment at Western were not a proper class, and the judgment of the district court that Western had discriminated in terms and conditions of hiring was vacated. This judgment was made final by the Supreme Court's denial of certiorari in the case. At that point, Western had won that aspect of the litigation, although it had lost others. Now, by way of intervention, Western has lost the case it had just won if the district court's initial findings are reinstated, as they probably will be.
 
 
 75
 With all deference to the opinion of my colleagues, I think the majority decision amounts to no less than a simple failure by this court to follow Rodriguez. Of what use is binding precedent that a man may not litigate for a class to which he does not belong if it may be avoided by the simple artifice of intervention after an adverse decision?
 
 
 
 [1]
 Western also argued below and now presses on this appeal the contention that the district court was "expressly precluded" from permitting intervention in the present case by our refusal to grant a petition for rehearing following the original appeal. In a footnote to their petition for rehearing, plaintiffs referred to Goodman v. Schlesinger, 584 F.2d 1325 (4th Cir. 1978), and Cox v. Babcock & Wilcox Co., 471 F.2d 13 (4th Cir. 1972), in which, upon finding that the named plaintiffs were not adequate representatives of a class, we remanded the cases with instructions that the class actions be retained on the docket for a reasonable time to afford an opportunity for a proper class representative to step forward. Plaintiffs remarked in the petition that failure to use such a procedure in the present case was "unfathomable." Western now reasons that, because plaintiffs requested in their petition for rehearing that we instruct the district court to utilize the procedure mandated in Goodman and Cox, our denial of that petition constitutes an express prohibition of intervention on remand. We ascribe no such significance to the denial of the petition
 
 
 [2]
 Although the district court made no express reference to this factor in its oral denial of the motion for intervention, it was apparently presented to the court, see Jt. App. at 412, and we therefore consider it appropriate to take that factor into account on appeal
 
 
 [3]
 That the adequacy of representation requirement of Fed.R.Civ.P. 23(a)(4) may be thought to operate in close conjunction with the commonality of issues requirement of 23(a)(2) and the typicality of claims requirement of 23(a)(3) to shape the class action issues in ways protective of the party opposing the class as well as the class members, see Stastny v. Southern Bell Telephone & Telegraph Co., 628 F.2d 267, 273 (4th Cir. 1980), does not belie the fact that its primary purpose is to insure, in the words of the rule, that "the representative parties will fairly and adequately protect the interests of the class." It should of course be open to a party opposing the class to resist reinstatement on the basis that, under the particular circumstances, that party's interests were directly jeopardized in this way by the fact that class members' claims were litigated in their behalf by persons who did not share their interests and injuries
 
 
 [4]
 Rodriguez, holding that failure of a named plaintiff's claim prior to class certification precluded subsequent class certification with that plaintiff as representative, expressly noted that "a different case would be presented if the (trial court) had certified a class and only later had it appeared that the named plaintiffs were ... inappropriate class representatives." Rodriguez, 431 U.S. at 406 n.12, 97 S.Ct. at 1898 n.12. This "different case" is of course exactly the one presented in Brown and in the instant case. "In such a case," said the Rodriguez Court, "... the claims of the class members would not need to be mooted or destroyed ...." Id
 
 
 [5]
 These were: that the court lacked jurisdiction in respect of one of the intervenor's claims because it was not timely filed; that the court lacked venue in respect of the claims of other intervenors because based upon discrimination occurring at a Maryland facility; and that none of the intervenors' claims was cognizable because of premature issuance of right-to-sue letters by the EEOC
 
 
 [6]
 With respect to the last of these-premature issuance of right-to-sue letters-we offer these observations. Whatever the "jurisdictional" consequence of premature issuance of right-to-sue letters or of premature commencement of private enforcement actions under Title VII, see EEOC v. Cleveland Mills, 502 F.2d 153, 155-56 (4th Cir. 1975) (dictum: "private right of action may not be exercised until the lapse of 180 days"), we think they do not apply to subsequent motions, such as these, to intervene as class representatives in an ongoing class action as to which this possibly "jurisdictional" predicate has already been met. To the extent the 180-day lapse before letter or suit is a jurisdictional predicate, see EEOC v. Raymond Metal Products Co., 385 F.Supp. 907, 916 (D.Md.1974), aff'd in relevant part, 530 F.2d 590 (4th Cir. 1976), it is so only to "avoid( ) potential interference with the Commission in the performance of its primary duties of conciliation and enforcement." EEOC v. Cleveland Mills, 502 F.2d at 156 (dictum). Where, as here, the original right to sue letter and commencement of action were not so premature, any "jurisdictional" concern on this score has been satisfied both as to the class and as to any putative members of that class who may thereafter seek intervention as named plaintiffs. Cf. Albemarle Paper Co. v. Moody, 422 U.S. 405, 414 & n.8, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1974). Accordingly, we hold that premature issuance of right-to-sue letters to the putative intervenors here would not, standing alone, preclude their intervention to prosecute individual or, as representatives, class claims
 A related problem, however, not specifically addressed by the parties, but potentially dispositive of the right of anyone effectively to intervene to press individual or class claims of hiring discrimination, is suggested by this challenge of prematurity, and must be addressed by the court on remand. That problem is whether, prior to commencement of the class action, Western was given fair notice and an opportunity to resolve through administrative conciliation the hiring discrimination claims now sought to be asserted by the intervenors. This was Western's due, see Scott v. Board of Education, 18 F.E.P. Cas. 1230, 1233 (D.Md.1979), and if it has not been accorded, those claims, either class or individual, may not now be prosecuted in this action by these intervenors or others. Cf. EEOC v. Sears, Roebuck & Co., 650 F.2d 14 (2d Cir. 1981) (EEOC suit dismissed for lack of fair opportunity in advance of action to "discuss (challenged) practices" at two of national chain's stores).
 On this question the record on this appeal is completely silent, and it must therefore be addressed in the first instance by the district court upon remand. This inquiry should be conducted in light of the generally accepted principle that the scope of a Title VII lawsuit may extend to "any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970); see also EEOC v. General Electric Co., 532 F.2d 359, 373 (4th Cir. 1976). This means that if Western was in fact given fair notice and an opportunity to discuss charges of, or administrative inquiries about, discrimination in hiring at its Arlington, Virginia facility prior to commencement of the class action intervention is not, on that basis alone, precluded.
 
 
 [7]
 Of course, even though an intervenor may be found preliminarily qualified over Western's procedural and jurisdictional challenges, see note 5 supra, he or she may yet be revealed to be an inadequate representative by subsequent developments, see note 4 supra. But that must of course abide those developments
 
 
 [8]
 The class representatives asserted and sought class certification of the claim of discrimination in hiring from the outset of their lawsuit. Jt. App. at 15. Plaintiffs presented evidence in support of this claim, including the testimony of a number of experts. See id. at 77-219. Based on the evidence submitted by plaintiffs, the district court concluded that Western had discriminated in hiring against both blacks and females at its Arlington, Virginia facility. Id. at 236. To remedy past discrimination and to prevent its recurrence in the future, the district court ordered the award of back pay to those who had been discriminatorily denied employment, priority hiring of those same persons as vacancies became available, and the formulation and implementation of nondiscriminatory, job-related employment criteria. Id. at 314
 In addition, plaintiffs vigorously defended the district court's decision on Western's appeal to this court. When we vacated that decision with respect to the hiring claims, plaintiffs sought reconsideration of our decision in a petition for rehearing directed to this court and in a petition for a writ of certiorari addressed to the Supreme Court. One can therefore hardly imagine more diligent representation.
 
 
 [9]
 A ready example of the critical distinction, for this purpose, between new evidence to refute existing findings and evidence of new post-finding events or conditions, may be suggested by Western's contention, advanced in the district court in opposing the motion to intervene, that it now has new evidence validating its pre-employment test. From this Western apparently contended that reinstatement of the findings would result in no economy of resources and avoid no duplications of proof because it would be entitled as a matter of course to introduce this (and presumably any other relevant) evidence to relitigate the underlying issue if intervention were allowed
 If this is the contention, it is flawed. To the extent the validity of that test, hence Western's business necessity defense based upon it, has already been determined adversely to Western on the evidence then before the court, there would obviously be no legal right on Western's part, were the court disposed generally to reinstate the findings, to have either that or any other finding reopened to permit the introduction of new evidence bearing upon it. The situation, instead, would be perfectly analogous to that in which a party seeks as a matter of the court's discretion to have findings set aside on the basis of additional evidence under Fed.R.Civ.P. 52(b) or 59(a)(2), or to be relieved from the effect of a judgment because of newly discovered evidence under Fed.R.Civ.P. 60(b)(2).
 In direct contrast, if evidence were available to Western that since the date of the findings a new pre-employment test had been adopted, that evidence might be admissible as a matter of right because relevant in establishing the terminal date of any continuing violation originally found by the court, hence the composition of the class entitled to ultimate relief.
 
 
 [1]
 While the majority makes no mention of the particular problems with bifurcation in this case, it admits that on remand there are numerous questions to be considered involving the qualifications of these individuals to serve as class representatives. At 390 & n. 6. It also should be noted that while the majority finds it significant that the trial judge did not explain the particular problems to be incurred on bifurcation, at ----, the trial judge's statement appears as part of a ruling from the bench and not as part of a formal memorandum. I also note my disagreement with the entire premise of footnote 6 of the majority opinion. It is apparent from the record that the EEOC did not receive any complaints on Western's hiring practices until October 2, 1979, over four years after this action was filed in district court, and nearly three years after the order initially appealed from
 
 
 [2]
 Western does not deny that its Maryland Installation District has assumed some installation duties that were formerly handled by the Arlington facility. It is important to note, however, that the Arlington facility housed both service and installation facilities and that all of the service and most of the installation functions remain at Arlington
 
 
 [3]
 The district court decree stated that if qualified individuals were available, the Arlington Service Center's new hires must be 60% female and 67% black
 
 
 [4]
 Courts have recognized an exception to this rule in the case of continuing violations of Title VII statutes. See Williams v. Norfolk & Western Railway, 530 F.2d 539 (4th Cir. 1975). As explained in footnote 5, Bailey cannot be considered to be the victim of continuing discrimination
 
 
 [5]
 In its memorandum opinion following trial, the district court rejected the argument that scrutiny of Western's hiring practices should be limited to those applying for jobs in the 180 day period prior to the filing of charges with the EEOC. Instead, the court certified a class including those who applied for jobs since July 2, 1965, the effective date of Title VII. It relied on our opinion in Williams v. Norfolk & Western Railway, 530 F.2d 539 (4th Cir. 1975), as the basis for concluding that Western's hiring policies were a continuing violation of Title VII. I believe the district court misconstrued the Williams opinion, which concerned an employer's continuing refusal to award seniority rights to veteran black employees. Id. at 541-42. By contrast, Western's decision not to hire Bailey in 1973 can only be considered to be a discrete event. There would not have been a continuing policy not to hire her, in contrast to the plaintiffs in Williams who challenged "this continuous discrimination, rather than any single discriminatory act." 530 F.2d at 542. See In re Consolidated Pretrial Proceedings, 582 F.2d 1142, 1148-49 (7th Cir. 1978). To allow Bailey to participate in this action, even though it was instituted after the expiration of her 180 day statute of limitations, would render the limitation meaningless. See Bronze Shields, Inc. v. New Jersey Department of Civil Service, 667 F.2d 1074 at 1080-1086 (3d Cir. 1981); In re Consolidated Pretrial Proceedings, 582 F.2d at 1148-49; Olson v. Rembrandt Printing Co., 511 F.2d 1228, 1234 (8th Cir. 1975)
 The reason that the application for employment and its non-acceptance must be considered the discrete act to commence the statute running is that unless something started the process, a person who wanted a job but never applied could sue under Title VII by simply filing an EEOC complaint, see Bronze Shields at p. 1083.
 
 
 [6]
 See also Franks v. Bowman Transp. Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); Simmons v. Brown, 611 F.2d 65 (4th Cir. 1979); Goodman v. Schlesinger, 584 F.2d 1325 (4th Cir. 1978); Cox v. Babcock & Wilcox Co., 471 F.2d 13 (4th Cir. 1972)
 
 
 [7]
 The Supreme Court, in remanding Finn, specifically did not reach the question of whether it would be proper to reinstate the verdict if perfect diversity was created through dismissal of a party. 341 U.S. at 18, n. 18, 71 S.Ct. at 542, n. 18
 
 
 [8]
 See Horn v. Lockhart and footnote 10, both infra
 
 
 [9]
 This aspect of the Firestone case was discussed at the 1981 Fourth Circuit Judicial Conference by Professors Mishkin, Wright, Phemister and Rutherglen (Conference Materials at 17), who take the position that Firestone overrules our decision on prospective application in Lester v. McFaddon, 415 F.2d 1101, 1106-08 (4th Cir. 1969). See also Richardson v. McFadden, 563 F.2d 1130, 1132-33 (Hall, J., concurring) (discussing the impropriety of ruling on the merits when a federal court lacks jurisdiction)
 
 
 [10]
 The reasoning in Firestone is particularly applicable to the facts in Horn v. Lockhart, 84 U.S. (17 Wall.) 570, 21 L.Ed. 657 (1873), a case relied on in many of the decisions cited by the Fifth Circuit in Finn. In Horn, the defendant twice before the final decree challenged the jurisdiction of the trial court, alleging a lack of complete diversity. The trial court nevertheless proceeded with the action and reserved its opinion on the question of jurisdiction. After determining that certain parties could be dismissed so as to create diversity, the court entered a final decree against the remaining parties, and the Supreme Court affirmed. Id. at 579. The Firestone Court's statement that a "court lacks discretion to consider the merits of a case over which it is without jurisdiction," 449 U.S. at 379, 101 S.Ct. at 676, indicates that a court should no longer proceed in the manner the trial court did in Horn
 
 
 [11]
 In DeNafo, the plaintiff sought judicial review of an administrative decision denying him Social Security disability benefits. The district court reversed the denial but then vacated its findings to allow the Secretary of Health, Education & Welfare to reconsider the earlier findings. 436 F.2d at 739. When the administrative process again resulted in a denial of benefits, the claimant argued that the district court's first decision to award benefits was the "law of the case" and binding on HEW under principles of res judicata. The Third Circuit disagreed, "since the court below vacated its original judgment." Id. at 740
 
 
 [12]
 Sutphen Estates, Inc. v. United States, 342 U.S. 19, 20, 72 S.Ct. 14, 15, 96 L.Ed. 19 (1951)
 
 
 [13]
 The instant case is similar in key aspects to Zimmer v. McKeithen, 467 F.2d 1381 (5th Cir. 1973), where, after the notice of appeal from a reapportionment order was filed, the district court attempted to change the order to encompass an alternative reapportionment plan. A panel of the Fifth Circuit refused to consider the revised plan, calling it a nullity. Id. at 1382. The Fifth Circuit, en banc, reversed the panel on the merits of the first plan, 485 F.2d 1297 (5th Cir. 1973), and the Supreme Court affirmed the en banc court, sub nom., East Carroll Parrish School Board v. Marshall, 424 U.S. 636, 638, n. 4, 96 S.Ct. 1083, 1084, n. 4, 47 L.Ed. 296 (1976). Significantly, the en banc court, as affirmed by the Supreme Court, reversed the district court, yet refused to consider the revised plan even though this could have obviated the need for subsequent judicial review. In all events, had the second plan had any effect, the question before both the en banc court and the Supreme Court would have been different. It thus appears that the Supreme Court has at least by implication acknowledged that a district court loses jurisdiction to effect settlement after notice of appeal has been filed