Lisa Michelle LAMBERT,

v.

Mrs. Charlotte BLACKWELL,
Supt., et al.

No. CIV.A. 01–2511.

United States District Court,
E.D. Pennsylvania.

Nov. 21, 2001.

Peter S. Greenberg, Christina Rainville, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for petitioner.

Amy Zapp, Jonelle Harter, Office of Atty. General, Harrisburg, PA, for respondents.

## MEMORANDUM

DALZELL, District Judge.

Before us is the respondents' motion to dismiss or, in the alternative, to strike the petition Lisa Michelle Lambert filed in this 28 U.S.C. § 2254 habeas action. Also pending is the third iteration of a motion for recusal of the assigned judge.[1] In addition, we ordered the parties to brief three threshold issues, which they have done.

Specifically, we asked the parties to submit their views first on the effect of Pennsylvania Supreme Court Order No. 218, Jud. Admin. Doc. No. 1 (May 9, 2000)(hereinafter "Order No. 218"), on the exhaustion question. Second, we asked for the parties' positions as to the effect of *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214 (1999) upon the deference, if any, this Court must, under the Anti–Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254, here accord Pennsylvania courts' findings and conclusions under the Pennsylvania Post–Conviction Relief Act, 42 Pa. Cons.Stat. Ann. § 9541 *et seq.* Lastly, we asked for their views as to the present effect, if any, of this Court's findings and conclusions in our April, 1997 adjudication, 962 F.Supp. 1521 (E.D.Pa. 1997).

This memorandum considers those motions and issues (the respondents elected to address the three issues as part of their motion to dismiss). In order to place these threshold questions and Lambert's

---

**1.** The first such motion was filed on April 17, 1997 and the second on February 23, 2001.

petition in proper context, we begin with a digest of this case's long history.

### I. *Procedural History*

On September 12, 1996, Lisa Michelle Lambert filed her *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We appointed counsel for her on October 4, 1996, and on January 3, 1997, in accordance with the leave we granted in our October 4 Order, these lawyers filed the first amended petition on Lambert's behalf.

After a conference with the parties' counsel on January 16, 1997, we granted Lambert's motion for permission to take certain discovery. We conducted a lengthy hearing in April, 1997, during which new evidence came to light regarding the investigation and prosecution of Lambert's case in state court. Based on this new evidence, and with the consent on the record of the District Attorney, we released Lambert into the custody of her lawyers on April 16, 1997.

The next day, the respondents (hereinafter "the Commonwealth") rescinded their consent, and sought Lambert's reincarceration. We denied this request, and the Court of Appeals the same day denied the Commonwealth's petition for stay or vacation of our Order releasing Lambert. *In re: Commonwealth of Pennsylvania,* No. 97–1280 (3d Cir. Apr. 17, 1997). In our opinion of April 21, 1997, we found over twenty instances of prosecutorial misconduct and granted Lambert's petition for a writ of habeas corpus, freeing her from all fetters of custody. *Lambert v. Blackwell,* 962 F.Supp. 1521 (E.D.Pa.1997).

On the same day we announced our decision, we on the record denied the Commonwealth's oral motion for a stay of Lambert's release pending appeal. On May 9, 1997, the Court of Appeals, after review of the record before us,[2] again denied the Commonwealth's motion to stay Lambert's release. *See Lambert v. Blackwell,* 1997 WL 309489 (3d Cir. May 9, 1997). On December 29, 1997, another panel of the Court of Appeals reversed, *Lambert v. Blackwell,* 134 F.3d 506 (3d Cir.1997); that panel vacated and remanded the case for failure to exhaust state remedies. On January 26, 1998, the Court of Appeals, over the dissent of Judge Roth (which three other judges joined), denied Lambert's petition for rehearing *en banc. Id.* at 525–26. In anticipation of her imminent return to custody, Lambert filed her petition under the Pennsylvania Post–Conviction Relief Act ("PCRA") on February 2, 1998. On February 3, 1998, pursuant to the Court of Appeals's mandate, we dismissed Lambert's first amended petition without prejudice. On February 4, 1998, Lambert surrendered. She then filed a petition for a writ of *certiorari* on April 23, 1998, U.S. Sup.Ct. No. 97–8812.

The PCRA court denied Lambert relief on August 24, 1998, and she then appealed to the Pennsylvania Superior Court. Lambert filed her second amended petition for writ of habeas corpus with us on March 30, 1999, but we took no action because of the ongoing state proceedings and the pending *certiorari* petition.

The Superior Court denied Lambert relief on December 18, 2000, *Commonwealth v. Lambert,* 765 A.2d 306 (2000), and on January 29, 2001, she filed with us her third amended petition for a writ of habeas corpus. On March 19, 2001, the United States Supreme Court denied Lambert's petition for a writ of *certiorari. Lambert v. Blackwell,* —— U.S. ——, 121 S.Ct. 1353, 149 L.Ed.2d 284 (2001). On May 21, 2001, in response to our Order of May 11, 2001, Lambert refiled her third amended petition under a new civil action number, C.A. No. 01–2511.

---

2. The proceedings had been transcribed daily.

The Commonwealth then filed its third motion for recusal of assigned judge,[3] and on July 16, 2001, it filed the instant motion to dismiss the petition, or in the alternative to strike the petition, arguing that it is untimely and fails to conform to this Court's local rules.

## II. *Timeliness*

Since Congress's adoption of the Anti–Terrorism and Effective Death Penalty Act, Pub.L. 104–132, 110 Stat. 1214 (1996), a state petitioner must file his or her federal habeas petition within a year of the date "on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). In this case, Lambert's state court conviction became final on September 30, 1996 when her time for filing a petition for a writ of *certiorari* expired. The Commonwealth argues that based on this date, Lambert had until September 30, 1997 to file a "proper" federal habeas petition, but did not do so. Commonwealth's Br. at 3.

The Commonwealth's position on this question is puzzling in several respects. First, the Commonwealth glances by the fact that Lambert *did* file a petition under 28 U.S.C. § 2254 on September 12, 1996, and an amended one on January 3, 1997. True, the ambit of her claims rapidly widened with time, but the habeas rules explicitly contemplate that the court may, as we did, allow "the record [to] be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition." R. Governing § 2254 Cases in the U.S. D. Cts. 7(a) (hereinafter "Habeas Rules") *in* 2001 Fed. Crim.Code and Rules (West).

The Commonwealth contends that the timeliness of Lambert's first and amended petitions was snuffed out when the Court of Appeals ultimately reversed on comity grounds. As we shall demonstrate below, the Commonwealth's proffered fiction founders on its confusion regarding the application of the limitation provisions of the AEDPA as they apply here. Specifically, the Commonwealth seems to ignore 28 U.S.C. § 2244(d)(1)[4], which provides

---

**3.** As inferred in note 1, *supra*, we had occasion to deny the Commonwealth's second motion to recuse earlier this year. *Lambert v. Blackwell*, 2001 WL 410639 (E.D.Pa.2001). That decision also recounted the history of the first motion, whose denial the Commonwealth unsuccessfully challenged in the Court of Appeals. *See In re: Commonwealth of Pennsylvania*, No. 97–1280 (3d Cir. Apr. 17, 1997). While noting that the Commonwealth's present motion is "substantially the same as its second motion for recusal," Lambert attempts to address the "material differences which we have discerned between the second and third recusal motions." Pet.'s Resp. to Mot. for Recusal at 1. We detect no "material differences", however, but rather restatements of the same legal arguments. Accordingly, we will deny this motion for the same reasons we denied the Commonwealth's previous iteration of the motion.

**4.** 28 U.S.C. § 2244(d)(1) states that:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

that the limitation period shall run from "the latest" of four dates, including "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(D).[5]

■ As to this last provision of the statute, it is well to recall that we granted Lambert's first motion for permission to take certain discovery on January 16, 1997. During the ensuing discovery period, Lambert assembled much of what became the factual predicates of her claims that were elucidated in the documents and testimony as it was adduced in the April, 1997 hearing. The most dramatic example of such revelations that month was when the mother of the murdered victim disclosed on April 16, 1997 that she saw Yunkin driving out of her development on December 20, 1991—crucial evidence that only became available when this testimony was made. Thus, Lambert discovered this factual predicate of her claims only on that day, and accordingly her one-year period only began to run (at least as to that aspect of her claims) on April 16, 1997.[6]

Of course, we do not mean to place exclusive reliance on this one disclosure. As noted, new information came out each day of the hearing, often in unexpected ways like the one cited. We emphasize the April 16 disclosure, however, because it was material enough to lead the Commonwealth that day thrice to acknowledge on the record, through the District Attorney himself, that "relief is warranted".

N.T. at 2703 (Apr. 16, 1997); *see also id.* at 2701 and 2704.

■ It is also fundamental to recall that Lambert was unconditionally released from all forms of custody on April 21, 1997. She was then jurisdictionally ineligible to file a new or amended petition in the federal system. *See* 28 U.S.C. § 2254(a)(federal courts have jurisdiction "in behalf of a person *in custody* ")(emphasis added). *Cf. Commonwealth v. Ahlborn,* 453 Pa.Super. 124, 683 A.2d 632, 641 (1996), *aff'd* 548 Pa. 544, 699 A.2d 718 (1997)(holding that "petitions not filed prior to the petitioner's unconditional release from custody are not cognizable under the PCRA and our courts are without jurisdiction to hear such petitions."). No fiction, however vigorously applied, can change the physical reality that Lambert was not in any form of custody from April 21, 1997 to February 4, 1998.

Thus, when Lambert returned to custody on February 4, 1998, as little as five days of her one-year period had expired, *i.e.,* from the April 16, 1997 disclosure to April 21, 1997 when she became jurisdictionally disabled from filing any petition in federal court. At most, only two hundred and three days elapsed from September 30, 1996 to April 21, 1997.

On August 24, 1998, the PCRA court denied Lambert relief. Lambert appealed to the Superior Court, which held on December 18, 2000 that Pennsylvania courts did not have jurisdiction under the PCRA to consider Lambert's petition. *Commonwealth v. Lambert, supra,* 765 A.2d at 322.

---

5. Even absent this statutory provision, Lambert's petition would in any case be timely based on equitable tolling principles, since it is well-established that "equitable tolling is demanded by sound legal principles as well as the interests of justice" in this case. *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999) (quoting *U.S. v. Midgley,* 142 F.3d 174 (3d Cir.1998)). *See also Nara v. Frank,* 264 F.3d 310, 319–20 (3d Cir.2001). However, since

we hold that 28 U.S.C. § 2244(d)(1)(D) applies, we need not consider this issue in any detail.

6. Lambert contends that important facts continued to be revealed throughout the PCRA hearing and that therefore the one-year period should start on June 24, 1998. Using either date, however, we reach the same result.

Lambert then filed her post-exhaustion habeas petition on January 29, 2001,[7] well within either the 360–day or 152–day remainder of her one-year limit.

Thus, even if there were merit to the idea of a fictional snuffing out of Lambert's earlier petitions, her petition is in all events timely. We will therefore deny the Commonwealth's motion to dismiss on this ground.

### III. *Failure to Conform to Local Rules*

■ In its motion to strike the petition, the Commonwealth contends that Lambert's petition fails to conform with our local rules.[8] Specifically, the Commonwealth states that the petition is not on the proper form, does not set forth each ground for relief and the relevant material facts for each, and "does not even identify the crime(s) of which she stands convicted." Commonwealth Br. at 10. The Commonwealth argues that we should therefore strike Lambert's petition and order her to submit a proper petition in conformity with the local rules.

The local rules the Commonwealth cites, Local R.Civ.P. 9.4(1)(a)-(m)(E.D.Pa.), and also Habeas Rule 2(c), contemplate *pro se* petitions. This premise is confirmed by the Advisory Committee Note from the 1976 adoption of Habeas Rule 2(c), which refers, *inter alia*, to the "lengthy and often illegible petitions" prisoners "submitted to judges who have had to spend hours deciphering them," a concern inapplicable to counselled petitions. *See* Habeas Rule 2(c) advisory committee note, 2001 Fed.Crim. Code and Rules at 196 (West). These local rules were promulgated for the convenience of the Court, and presupposed the *pro se* petitioner who appears in the vast majority of these cases. Moreover, as Lambert argues, Lambert's counselled petition was filed in compliance with our Order of May 11, 2001, and the Commonwealth did not object to that Order at the time.[9]

In the alternative, Lambert offers to "file the form that the Commonwealth is so desirous of receiving" and "file if the Court desires a supplement to her petition in which she will reformulate Exhibit K and will set out in numbered paragraphs, with record citations and with appropriate legal authority, the detailed basis for her claims." Pet.'s Resp. to Mot. to Dismiss at 19. We find, however, that taking this course would elevate form over substance and require counsel for both Lambert and the Commonwealth to engage in additional, repetitive work to duplicate and respond to material already painstakingly covered in the pending petition.[10]

We will therefore deny the Commonwealth's motion to strike.

### IV. *Exhaustion After Order No. 218*

■ Under federal habeas law, a petitioner must as a general rule exhaust all

---

**7.** Even if we use May 21, 2001, the date Lambert refiled her petition under the new civil action number pursuant to our Order of May 11, 2001, as the operative date, her petition would remain timely. But reference to that late date would ascribe substantive significance to what was only a clerical exercise, which we will not do.

**8.** The Commonwealth also argues that Lambert herself did not sign the petition, as Habeas Rule 2(c) requires. As Lambert points out, her counsel signed the petition pursuant to

Fed.R.Civ.P. 11. It is worth noting here that her original, *pro se* petition was submitted on the Court's forms; Lambert herself signed this handwritten completed form.

**9.** Indeed, it also did not object to the January 3, 1997 amended petition, which counsel filed on Lambert's behalf pursuant to the leave we granted in our October 4, 1996 Order.

**10.** Alternatively, we hold that the Commonwealth has twice waived its right to object on this ground.

state remedies before pursuing federal relief. *See Rose v. Lundy*, 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (holding that "state remedies must be exhausted except in unusual circumstances").

In *Lambert v. Blackwell*, 134 F.3d 506 (3d Cir.1997), our Court of Appeals held that it was unclear whether Lambert had indeed exhausted her available state remedies. Since the Court of Appeals's decision, the Pennsylvania Supreme Court promulgated the following rule:

AND NOW, this 9th day of May, 2000, we hereby recognize that the Superior Court of Pennsylvania reviews criminal as well as civil appeals. Further, review of a final order of the Superior Court is not a matter of right, but of sound judicial discretion, and an appeal to this Court will only be allowed when there are special and important reasons therefor. Pa.R.A.P. 1114. Further, we hereby recognize that criminal and post-conviction relief litigants have petitioned and do routinely petition this Court for allowance of appeal upon the Superior Court's denial of relief in order to exhaust all available state remedies for purposes of federal habeas corpus relief.

In recognition of the above, we hereby declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing or allowance of appeal following an adverse decision by the Superior Court in order to be deemed to have exhausted all available state remedies respecting a claim of error. When a claim has been presented to the Superior Court, or to the Supreme Court of Pennsylvania, and relief has been denied in a final order, the litigant shall be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief. This Order shall be effective immediately.

Order No. 218.

■ The question before us is what is the effect of Order No. 218 on the question of whether or not Lambert has exhausted her state remedies.[11] To decide this question requires a brief digression on the United States Supreme Court's recent habeas jurisprudence.

The Supreme Court, in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), held that, generally, a state prisoner must pursue an application for discretionary review in order to exhaust. However, the Court was at pains to state that:

[N]othing in our decision today requires the exhaustion of any specific state remedy when a State has provided that that remedy is unavailable. Section 2254(c), in fact, directs federal courts to consider whether a habeas petitioner has 'the right under the law of the State to raise, by any available procedure, the question presented.' The exhaustion doctrine, in other words, turns on an inquiry into what procedures are 'available' under

---

11. The Commonwealth argues that the Pennsylvania Supreme Court did not have authority to issue Order No. 218, and that therefore Order No. 218 is invalid. Putting aside the gross affront to comity it would (at a minimum) be for us to opine as to a state tribunal's power to amend its own rules, federal courts have to date recognized the validity of the Order. *See* discussion in the text, *infra*. While the Commonwealth contends that *Mattis v. Vaughn*, 128 F.Supp.2d 249 (E.D.Pa.

2001) did not address the question of Order No. 218's validity, the court did so in holding that while "[t]he Supremacy Clause of the United States Constitution would appear to prevent such a directive, ... [t]he Order can be valid ... if we read it only as a declaration by the Pennsylvania Supreme Court that discretionary review is 'unavailable' or 'not within a full round of its ordinary review process' as Arizona and South Carolina have done." *Id.* at 259.

state law. In sum, there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available. We hold today only that the creation of a discretionary review system does not, without more, make review in the Illinois Supreme Court unavailable.

*Id.* at 847–48, 119 S.Ct. 1728.

In his concurrence, Justice Souter explained that:

I understand that we leave open the possibility that a state prisoner is likewise free to skip a procedure even when a state court has occasionally employed it to provide relief, so long as the State has identified the procedure as outside the standard review process and has plainly said that it need not be sought for the purpose of exhaustion.

*Id.* at 849, 119 S.Ct. 1728.

Crucial to our analysis of Order No. 218, Justice Souter then quoted with approval from a declaration of the Supreme Court of South Carolina, *In re Exhaustion of State Remedies in Criminal and Post–Conviction Relief Cases,* 321 S.C. 563, 564, 471 S.E.2d 454 (1990). As will be readily apparent, except for the difference in the name of the South Carolina intermediate appellate court from that of Pennsylvania's cognate appellate court, the South Carolina language is identical with Order No. 218:

[I]n all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

*See id.*

There is therefore no room for doubt that the Supreme Court of Pennsylvania accepted the invitation Justice Souter extended in his concurrence in *O'Sullivan,* and adopted Order No. 218 on the South Carolina model.

One week after the Supreme Court decided *O'Sullivan,* it granted a petition for a writ of *certiorari* in *Swoopes v. Sublett,* 163 F.3d 607, 1998 WL 657711 (9th Cir. 1998), and that same day vacated and remanded the case to the Ninth Circuit "for further consideration in light of *O'Sullivan v. Boerckel,*" *Swoopes v. Sublett,* 527 U.S. 1001, 119 S.Ct. 2335, 144 L.Ed.2d 233 (1999). On remand from the Supreme Court, the Ninth Circuit considered Arizona Supreme Court jurisprudence regarding exhaustion of Arizona post-conviction relief, and summarized that authority as holding "that, in cases not carrying a life sentence or the death penalty, review need not be sought before the Arizona Supreme Court in order to exhaust state remedies." *Swoopes v. Sublett,* 196 F.3d 1008, 1010 (9th Cir.1999), *cert. denied,* 529 U.S. 1124, 120 S.Ct. 1996, 146 L.Ed.2d 820 (2000). Noting that "[t]he import of *O'Sullivan* is that exhaustion is not required when a state declares which remedies are 'available' for exhaustion" and that "Arizona has done so", the Ninth Circuit held that the petitioner "was not required to file a petition for review before the Arizona Supreme Court to exhaust his claims for federal habeas purposes", *id.* at 1011.

Both district courts in this Circuit that have interpreted Order No. 218 have reached the conclusion that under Order No. 218, a state prisoner need not seek discretionary review with the Pennsylvania Supreme Court for the purposes of federal habeas exhaustion.[12] First, in *Mattis,* Judge VanAntwerpen held that:

---

**12.** Other than these two district court cases and *Swoopes,* we have found no other cases

We likewise conclude that principles of deference to Supreme Court dicta and of comity towards the state courts, which is the basis of the exhaustion doctrine, require us to respect the pronouncement of the Pennsylvania Supreme Court in Order No. 218. We therefore conclude and hold that Order No. 218. removes a petition for discretionary review from one full round of Pennsylvania's ordinary review process and therefore makes discretionary review unavailable for the purpose of the exhaustion requirement in § 2254.

*Mattis,* 128 F.Supp.2d at 261.

Discussing the issue of comity, Judge VanAntwerpen wrote:

> [T]he interests of comity would be greatly disserved by ignoring the pronouncements of state supreme courts that they see no need for prisoners to petition them for discretionary review before the prisoners can seek federal habeas corpus relief ... From the beginning, the purpose of the exhaustion doctrine has been to demonstrate respect for the state courts. Disregarding a state supreme court's explicit attempt to control its docket and to decline the comity extended to it by the federal court goes against the very purpose of the exhaustion doctrine and obliterates the concept of comity.

*Id.* at 259.

Second, in *Blasi v. Attorney General of Com. of Pennsylvania,* 120 F.Supp.2d 451, 466 (M.D.Pa.2000) *aff'd,* 275 F.3d 33 (Table, No. 00–3527) (3d Cir.2001), Judge McClure held that:

> We believe that we are bound to hold, and we do hold, that the order of the Supreme Court of Pennsylvania waives the exhaustion doctrine insofar as the

doctrine requires a petitioner under § 2254 to present claims to the Supreme Court of Pennsylvania in a petition for allocatur prior to presenting them in federal court.[13]

While, to be sure, the foregoing analysis derives from something other than a square holding in *O'Sullivan,* it is congenial with the concerns of comity that have animated this jurisprudence since *Rose v. Lundy, supra,* and *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Put another way, it would be odd indeed in the name of federal-state comity to ignore a state supreme court when it says, "Thank you, no thank you" to federal deference in cases involving discretionary review. Indeed, to ignore such expressions from the highest tribunal of a state would constitute a federal-court-knows-best patronizing that comity seeks to avoid. The expressions in *O'Sullivan,* though admittedly not authoritative, are nevertheless consistent with these core values associated with comity, and thus we find *Swoopes* and *Mattis* persuasive and therefore follow them.

We in no way by this holding intend to be dismissive of the inestimable value of the federal structure our Constitution ordains. This structure is unquestionably part of the edifice of liberty our Constitution constructed. As the Supreme Court put it in *Printz v. United States,* 521 U.S. 898, 921, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997), quoting *Gregory v. Ashcroft,* 501 U.S. 452, 458, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991):

> This separation of the two spheres is one of the Constitution's structural protections of liberty. "Just as the separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of

---

applying *O'Sullivan* to similar discretionary review rules of state supreme courts.

**13.** The court expressed "great reservation about this holding," *Blasi,* 120 F.Supp.2d at 466, reservations which we do not share.

excessive power in any one branch, a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front."

The final arbiter of that "healthy balance of power" most assuredly is the United States Supreme Court. *See Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803). Thus, it is conceivable that the United States Supreme Court could hold that the primacy of the federal structure trumps the deference comity would normally dictate to a state tribunal's views about its criminal docket.

This possibility, however, remains not only conjectural, but, we believe, unlikely given the vigor of the Supreme Court's stress on comity's importance in the years since *Rose. See, e.g., Coleman v. Thompson, supra.* Thus, all we believe we are doing here is taking the Supreme Court at its word on comity.

Order No. 218 makes a petition for allocatur an extraordinary remedy that prisoners need not avail themselves of to be deemed to exhaust. For federal habeas purposes, Lambert did not have to petition for allocatur to exhaust her state remedies.[14]

## V. *PCRA Findings*

We next asked the parties to address the effect of *Commonwealth v. Fahy,* 558 Pa. 313, 737 A.2d 214 (1999) upon the deference, if any, this Court must accord the PCRA Court's findings and conclusions and the Superior Court's consideration of such findings and conclusions notwithstanding *Fahy. Fahy* held that "[t]his court has made clear that the time limitations pursuant to the amendments to the PCRA are jurisdictional" and "the court has no jurisdiction to address an untimely petition," as "[j]urisdictional time limits go to a court's right or competency to adjudicate a controversy. These limitations are mandatory and interpreted literally." *Id.,* at 222–23.[15] This unqualified language as applied here is, at a minimum, in tension with our AEDPA-mandated deference to state proceedings.[16]

---

14. Even absent Order No. 218, Lambert exhausted her state remedies, since under *Lines v. Larkins,* 208 F.3d 153 (3d Cir.2000), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 785, 148 L.Ed.2d 681 (2001), "exhaustion would be futile and is excused," *Lines* at 166, as Lambert was time-barred from filing a PCRA petition, and this time bar is both "mandatory and jurisdictional". *Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201, 202 (2000).

It also bears stress that Lambert complied to the letter and spirit of the Court of Appeals's decision when she returned to state court. Indeed, to say that she exhausted is to risk understatement. The PCRA record of 12,000 pages and 1,000 exhibits raised over sixty issues. *See* Second Amended Petition (docket paper no. 145 in C.A. No. 96–6244) at 16. Indeed, the trigger for the second amended petition was the Superior Court's refusal to afford Lambert more than fifty pages to consider those many issues. What Lambert styled her "Complete Brief", Ex. E to her second amended petition, ran to 150 pages and demonstrates the breadth and depth of Lambert's proffer to the state courts.

15. The Commonwealth argues that *Fahy* has no effect upon the deference we must accord the lower state courts' findings and conclusions. For the reasons stated, we disagree with this position. Because we find that the Commonwealth's position has no merit, there is no need to canvass the other bases that the Commonwealth proffers in support of its position in this regard.

16. The statute, 28 U.S.C. § 2254(d), in this respect provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding,

It will be helpful first to restate the relevant procedural history. Lambert filed a petition for post-conviction relief in state court after our Court of Appeals held that it was possible that she had failed to exhaust her state remedies. The PCRA court, which made findings of fact and conclusions of law, denied her petition. Lambert then appealed to the Pennsylvania Superior Court. That Court held that the petition was untimely, stating that "[o]n its face, Appellant's PCRA petition is out of time, as it was filed over sixteen months after her judgment of sentence became final and four months after the expiration of the one year jurisdictional time limit set forth in the PCRA." *Commonwealth v. Lambert*, 765 A.2d 306, 319 (Pa.Super.2000).

■ As Lambert points out, the Pennsylvania Supreme Court has repeatedly held that a court is without jurisdiction to consider an untimely PCRA petition. *See Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780, 783 (2000) (the trial court does not have the power to address the substantive merits of an untimely PCRA petition); *Commonwealth v. Pursell*, 561 Pa. 214, 749 A.2d 911, 914 (2000) (petition untimely so court has no jurisdiction); *Commonwealth v. Murray*, 753 A.2d at 203 (Pa.2000) (same); *Commonwealth v. Bronshtein*, 561 Pa. 611, 752 A.2d 868, 871 (2000) (same); *Commonwealth v. Hall*, 565 Pa. 92, 771 A.2d 1232, 1234 (2001) (same).

Our Court of Appeals has also recognized this principle. It last year held that when "the period for filing such a petition has long since run, [ ] the courts of Pennsylvania therefore no longer have jurisdiction." *Lines, supra*, 208 F.3d at 165 n. 14 (citing *Commonwealth v. Banks*, 556 Pa. 1, 726 A.2d 374, 376 (1999)).

■ Since the state courts did not have jurisdiction to hear the case, they could not properly reach the merits, and therefore their findings are void and we need not accord them any deference.[17] This is the uniform and unqualified rule under settled Pennsylvania jurisprudence. As the court summarized the law in *Rieser v.*

---

written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

17. We recognize that the Superior Court, notwithstanding its holding as to jurisdiction, nevertheless went on to address the merits of Lambert's PCRA petition. We need not resolve this puzzle, however, given the uniform and unbending authority of the Pennsylvania Supreme Court since *Fahy*, cited in the text, that a trial court does not have the power to address the merits when there is no jurisdiction under the PCRA.

*Glukowsky,* 435 Pa.Super. 530, 646 A.2d 1221 (1994) (superseded by rule on other grounds, *Tauss v. Goldstein,* 456 Pa.Super. 376, 690 A.2d 742 (1997)) (internal citations omitted):

> Where a court lacks jurisdiction in a case, any judgment regarding the case is void. The effect of a void judgment is that it must be treated as having never existed. A void judgment is not entitled to the respect accorded to, and is attended by none of the consequences of, a valid adjudication. Indeed, a void judgment need not be recognized by anyone, but may be entirely disregarded or declared inoperative by any tribunal in which effect is sought to be given to it. It has no legal or binding force or efficacy for any purpose or at any place.... All proceedings founded on the void judgment are themselves regarded as invalid and ineffective for any purpose. In short, a void judgment is regarded as a nullity, and the situation is the same as it would be if there were no judgment. It accordingly leaves the parties litigant in the same position they were in before the trial.

*Rieser* at 1224.

Or, as the Pennsylvania Supreme Court put it in a unanimous decision last year in *Commonwealth v. Murray,* 562 Pa. 1, 753 A.2d 201, 203 (2000), "given the fact that the PCRA's timeliness requirements are mandatory and jurisdictional in nature, no court may properly disregard or alter them in order to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner." *See also Allbritton Communications Co. v. N.L.R.B.,* 766 F.2d 812, 820 (3d Cir.1985) ("Clearly, the sole issue relevant to this judgment was the jurisdictional question; any 'findings' by [the District] Judge on

the merits of the dispute were simply irrelevant.").

■ Therefore, because the courts lacked jurisdiction, settled Pennsylvania law holds their factual findings and legal conclusions are a nullity. And because the court proceedings are void, there is no legitimate interest to which we must defer under the AEDPA[18] or in the more generalized name of judge-made comity. As our Court of Appeals put it in *In re James,* 940 F.2d 46, 52 (3d Cir.1991), "[t]here appears to be only one exception to this hard and fast rule of federal-state comity, and it comes into play only when the state proceedings are considered a legal nullity and thus void *ab initio* .... Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests."

Accordingly, we find that we must accord no deference to the PCRA court's findings and conclusions or the Superior Court's consideration of such findings and conclusions since under settled Pennsylvania Supreme Court authority those courts did not have jurisdiction to hear the merits of the controversy. Their findings are therefore of no effect here.

## VI. *Our 1997 Findings*

Finally, we asked the parties to brief the present effect, if any, of this Court's findings and conclusions in our April, 1997 adjudication, *Lambert v. Blackwell,* 962 F.Supp. 1521 (E.D.Pa.1997).

■ In this case, our Court of Appeals vacated our decision for failure to exhaust state remedies. We note at the outset that failure to exhaust state remedies does

---

18. Recall that the fourth exception the statute cites is where "the State court lacked jurisdiction of the subject matter or over the person in the State court proceeding." *See* note 16, *supra.*

*not* constitute a jurisdictional defect. As our Court of Appeals has twice phrased it in recent years: "[t]he exhaustion rule is not jurisdictional", *Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir.1995); "exhaustion is not jurisdictional, but a matter of comity," *Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994). This important distinction has been embedded in federal jurisprudence since not long after the Civil War. As the Supreme Court put it in *Ex parte Royall*, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868, (1886):

> The injunction to hear the case summarily, and thereupon 'to dispose of the party as law and justice require,' does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution.

*See also Rose v. Lundy, supra*, 455 U.S. at 515, 102 S.Ct. 1198, (quoting *Royall* ). Or as the Supreme Court put it in *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438, (1971), "It has been settled since *Ex Parte Royall* that a state prisoner must normally exhaust available judicial state remedies before a federal court will entertain his petition for habeas corpus.... The exhaustion-of-state-remedies doctrine ... reflects a policy of federal-state comity."

▪ Because the Court of Appeals dealt only with the exhaustion issue, and did not discuss the merits of our findings, we are free to reinstate those prior findings and conclusions. While the Court of Appeals held that we "prematurely pro-

ceeded to adjudicate the merits", it did not state that we wrongly decided them or that we could not now reinstate or supplement them. *Lambert v. Blackwell*, 134 F.3d at 523.

▪ To the contrary, "a district court is free to decide any issue that was not explicitly or implicitly decided on a prior appeal." *Taylor v. United States*, 815 F.2d 249, 252 (3d Cir.1987). Further, a lower court is free to adopt any or all of a prior decision that it determines to be unaffected by a vacation order. *Hughes Aircraft Co. v. U.S.*, 140 F.3d 1470, 1477 (Fed.Cir.1998) (reinstating damages determination not addressed by vacation order), abrogated on other grounds, *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, (Fed.Cir.2000), *cert. granted*, —— U.S. ——, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001).

Because our findings are not inconsistent with the Court of Appeals's holding, we are free to reinstate them. As our Court of Appeals held in *In re Chambers Development Co., Inc.*, 148 F.3d 214 (3d Cir.1998):

> A district court 'may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision.' Therefore the district court was 'free to make any order or direction in further progress of the case, not inconsistent with [our] decision ... as to any question not settled by the decision' on remand.

*Id.* at 225 (quoting *Bankers Trust Co. v. Bethlehem Steel Corp.*, 761 F.2d 943, 949–50 (3d Cir.1985)).

Other Circuits have also upheld this principle. In a habeas case with procedural features of striking tangency with Lambert's, the Seventh Circuit had occasion to consider what would happen on remand of a case that, like this one, had been fully tried. In *Crump v. Lane*, 807 F.2d 1394 (7th Cir.1986), which found a lack of ex-

haustion notwithstanding the State's waiver of the issue, the Seventh Circuit held that

> We appreciate that the district court has already held a full evidentiary hearing on the merits of Crump's claims. Unfortunately, this fact in itself does not allow us to circumvent the exhaustion requirement of § 2254(b). It should, however, substantially obviate the need for further fact-finding if Crump chooses to reinstate his action in the district court upon exhausting all available state court remedies.

*Id.* at 1399. When Crump returned to the district court, *Crump v. Illinois Prisoner Review Board,* No. 90–C–2134, 1990 WL 205807 *2, 1990 U.S. Dist. LEXIS 16156 at * 6 (N.D.Ill. Nov.29, 1990), the court stated that "[t]o the extent the Seventh Circuit's ruling nullified the prior proceedings before this court, we hereby adopt our 1985 reasoning." *See also Hill v. Western Elec. Co., Inc.,* 672 F.2d 381, 388 (4th Cir.1982) (holding that "upon remand following the vacation of a judgment for a jurisdictional defect, it may be appropriate for a trial court to reinstate the judgment once the defect has been cured. This principle must certainly extend past the reinstatement of a judgment itself to reinstatement of findings and conclusions supporting it, and past true jurisdictional defects to less fundamental defects not affecting the merits.").

*Goodman v. Lukens Steel Co.,* 777 F.2d 113 (3d Cir.1985), *aff'd* 482 U.S. 656, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987), is instructive as an application of this principle. In *Goodman,* our Court of Appeals vacated a bench trial determination on non-merits grounds. Discussing the authority of the district court to reinstate its previous findings and conclusions, the Court of Appeals held that the district court's previous finding may be reinstated as long as neither party is prejudiced by the reinstatement. *Id.* at 125. As our Court of Appeals put it:

> The district court also has the responsibility of determining whether it would be unfair to defendants to reinstate the findings. That the net effect is to revive an adverse result is not in itself a sufficient showing of prejudice. Rather, the court should consider whether the defendants' preparation and tactics would have been different had other class representatives been in place at the earlier trial. In other words, the question is would defendants have conducted the litigation differently in some material way absent the defect in representation in the prior proceeding.

*Id.* at 125.

In this case, both Lambert and the Commonwealth fully developed their cases on the issues, and it would be hard to imagine how they would "have conducted the litigation differently" absent the prudential defect the second Court of Appeals panel later found. Both sides had the opportunity to conduct extensive discovery, and in fact did so. Each side was afforded the right to cross-examine every witness and present witnesses of her or its own. In addition, there is a large, fully transcribed testimonial record. The Commonwealth was at all times represented by the then-District Attorney of Lancaster County himself.[19] Our factual findings were made under the AEDPA's "clear and convincing" standard.[20] Our 1997 legal conclusions do not offend subsequent Pennsylvania authority.[21]

---

**19.** Since elected a Judge of the Court of Common Pleas, a development that would, in fact, put successor counsel at a disadvantage, as Lambert's principal counsel remain in the case.

**20.** *See* 28 U.S.C. § 2254(e)(1).

**21.** *Compare, e.g., Fahy, supra* with note 10 of our 1997 findings, 962 F.Supp. at 1526 ("Thus, Ms. Lambert has no state forum in which to raise the weighty claims she has

A powerful interest in judicial economy also mandates reinstatement of our previous findings and conclusions. " 'The judicial system's interest in finality and in efficient administration' dictates that, absent extraordinary circumstances, litigants should not be permitted to relitigate issues that they have already had a fair opportu-

nity to contest." *Cowgill v. Raymark Industries, Inc.*, 832 F.2d 798, 802 (3d Cir. 1987) (quoting *Todd & Co., Inc. v. S.E.C.*, 637 F.2d 154, 156 (3d Cir.1980)). As discussed above, it risks understatement here to hold that both Lambert and the Commonwealth had a fair opportunity to contest the issues in this case over the span of three weeks of trial.[22]

proved beyond doubt here."). *See also Commonwealth v. Martorano*, 559 Pa. 533, 741 A.2d 1221, 1223 (1999), which confirmed the vitality of *Commonwealth v. Smith*, 532 Pa. 177, 615 A.2d 321 (1992), cited in the 1997 findings at 962 F.Supp. at 1552, n. 45.

22. The Commonwealth contends that because our adjudicatory process was flawed at the outset, our findings and conclusions were so illegitimate that they evaporated. We briefly address that argument and its cognates here.

First, the Commonwealth contends that the AEDPA and subsequent jurisprudence place significant restrictions on the ability of federal courts to issue habeas relief. The Commonwealth also points out that federal courts are now required to afford "a great deal" of deference to the decisions of state courts, and that federal courts are now more restricted in their ability to conduct evidentiary hearings on habeas claims. Commonwealth Br. at 13. The Commonwealth also argues that the threshold determinations required by federal habeas law in the wake of the AEDPA, including what claims, if any, are viable, and whether or not a hearing is required, were never made.

We note that Lambert filed her initial petition after the AEDPA's effective date, and while the cases the Commonwealth cites interpret the AEDPA, they do not substantively alter its requirements. Our prior proceedings met the procedural provisions of the AEDPA that the Commonwealth references, and because the Commonwealth interposed no such objection at that time, the Commonwealth thereby waived its right to object on these grounds.

The Commonwealth also makes the surprising statement that our "prior findings and conclusions are of no import here for the additional reason that they have no relevance to any viable issue." Commonwealth Br. at 17. But a comparison of those prior findings and conclusions with Lambert's petition dem-

onstrates their direct pertinence to the current controversy.

The Commonwealth further contends that our hearing was improperly convened because there was no determination about whether Lambert's claims were procedurally defaulted, and that, in fact, Lambert's claims are procedurally defaulted. This contention argues past the teaching of cases like *Crump v. Lane*, discussed and quoted *supra* in the text, which explicitly authorize a district court to reinstate findings previously made in a non-exhausted procedural context. It is true that in *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999), our Court of Appeals stated that "[w]hen a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' In such cases, however, applicants are considered to have procedurally defaulted their claims and federal courts may not consider the merits of such claims," (internal quotations and citations omitted). The Commonwealth argues that if Lambert's failure to file a timely PCRA petition deprived the state courts of jurisdiction, her claims are procedurally defaulted and she is barred from pursuing them in federal court.

*McCandless*, however, states that a petitioner can establish " 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default." *Id.* We find that Lambert can establish a "fundamental miscarriage of justice" under *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), and *Schlup v. Delo*, 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), and therefore her claims are not procedurally defaulted and our prior proceedings were not flawed on this basis. Further, the holding of the Superior Court in Lambert's case demonstrates that Pennsylvania jurisprudence on timeliness takes no account of the fact that from April 21, 1997 to February 4, 1998 Lam-

We therefore find that we have the authority to reinstate our findings of fact and conclusions of law from our April, 1997 adjudication. Considerations of fairness and judicial economy warrant that we exercise that authority.

## VII. *Conclusion*

To summarize, Lambert's petition is timely and need not conform with local rules not designed for counselled petitions nor relevant to a case in her procedural posture. Having complied with the Court of Appeals's direction in the Court of Common Pleas and Pennsylvania Superior Court, Lambert's state claims were exhausted, as Order No. 218 made it clear that she was not required to petition the Pennsylvania Supreme Court for discretionary review to "be deemed to have exhausted all available state remedies for purposes of federal habeas corpus relief." In addition, we need accord no deference to the PCRA court and the Superior Court's findings as under settled Pennsylvania law they did not have jurisdiction to hear the merits of the case. Finally, because the Court of Appeals vacated our decision only on exhaustion grounds, we have the authority to reinstate our findings and conclusions, and do so.

We now invite both Lambert and the Commonwealth to submit their views by December 20, 2001 as to whether either side desires to present additional testimony, and, if so, to describe how that testimony would address topics not previously canvassed in the 1997 proceedings.

*ORDER*

AND NOW, this 21st day of November, 2001, upon consideration of the respondents' motion to dismiss or in the alternative to strike the petition, and the respondents' motion for recusal of assigned judge, and for the reasons stated in the accompanying Memorandum, it is hereby ORDERED that:

1. The respondents' motion for recusal of assigned judge is DENIED;

2. The respondents' motion to dismiss or in the alternative to strike the petition is DENIED;

3. The parties shall SUBMIT their views by December 20, 2001 as to whether they desire to adduce additional testimony, and, if so, how that proposed evidence would address topics not previously considered in the 1997 proceedings; and

4. If any such topics for additional hearing are identified, the parties shall by January 4, 2002 submit their views as to what antecedent discovery, if any, is required.

bert was free of all fetters on her custody, a fact which under federal law, cited *supra*, disabled her during that time from seeking federal habeas relief. This lack of tolling, equitable or otherwise, also supplies Lambert with the requisite cause and prejudice.

As summarized in note 14, *supra*, Lambert preserved over sixty issues during her sojourn in the state courts at the Court of Appeals's behest, only to learn that all was for naught. If nothing else is clear, it is that Lambert's admittedly anomalous procedural posture was not of her making.